Shaun Setareh (SBN 204514)
  shaun@setarehlaw.com
H. Scott Leviant (SBN 200834)
  scott@setarehlaw.com
**SETAREH LAW GROUP**
315 S. Beverly Dr., Suite 315
Beverly Hills, California  90212
Telephone:      (310) 888-7771
Facsimile:      (310) 888-0109

Attorneys for Plaintiff
ANDREW QUIRUZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW QUIRUZ, on behalf of himself, all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>SPECIALTY COMMODITIES, INC, a North Dakota corporation; ARCHER-DANIELS-MIDLAND COMPANY, a business entity form unknown; and DOES 1-100, inclusive,<br><br>*Defendants.* | Case No.: 5:17-cv-03300-BLF<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:            June 27, 2019<br>Time:            9:00 a.m.<br>Courtroom:      Courtroom 3<br>Judge:           Hon. Beth L. Freeman<br><br>Action Filed:      May 3, 2017<br>Date of Removal:   June 7, 2017 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 2

II.   BACKGROUND .......................................................................................................... 2

III.  SUMMARY OF SETTLEMENT TERMS ................................................................. 3

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL ................................. 5

      A.    Plaintiff's Claims Merit Class Action Treatment ........................................... 6

            1.    Numerosity ............................................................................................. 6

            2.    Commonality and Predominance of Common Issues ............................ 7

            3.    Typicality ............................................................................................... 8

            4.    Adequate Representation ........................................................................ 9

            5.    Superiority ............................................................................................. 9

      B.    At This Stage, Plaintiff Need Only Establish That the Settlement Falls Within the Range of Reasonableness .......................................................................... 10

            1.    The Value of the Settlement to Class Members Is Fair, Reasonable and Adequate .......................................................................................... 12

            2.    The Agreed Upon Fees and Costs Are Reasonable ............................. 14

            3.    The Service Award Is Reasonable ....................................................... 16

            4.    The Class Notices ................................................................................ 17

V.    THE COURT SHOULD SCHEDULE A FAIRNESS HEARING ........................... 18

VI.   CONCLUSION .......................................................................................................... 18

TABLE OF AUTHORITIES

**FEDERAL DECISIONAL AUTHORITY**

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ................................................5

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305 (6th Cir. 1980) .......5, 6

*Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598 (N.D. Cal. 1993) ......................................6

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ................................................................6, 7, 8

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171 (9th cir. 1990) ..........................8

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ................8, 10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...............................................................6

*Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747 (M.D. Fla. 1998) ..........................................10

*Hammon v. Barry*, 752 F.Supp 1087 (DDC 1990)...............................................................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................................................5, 7, 8, 9

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)........................................................8

*In re Armored Car Anti-Trust Litigation*, 472 F.Supp 1357 (ND GA 1979) .........................................11

*In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986)................................................7

*In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166 (S.D. Cal. 2007) ......................11, 12

*In re Mercury Interactive Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ......................................16

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) .........................................18

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997)......................................16

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001).............................................16

*Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986) ...............................................................7

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064 (N.D. Cal. 1997)....................................11, 12

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,

    834 F.2d 677 (7th Cir. 1987)........................................................11

*Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980) ...........................................................17

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)....................................17

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,

688 F.2d 615 (9th Cir. 1982) ........................................................................................10, 11

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ...................................14

*Pridd v. Edelman*, 883 F.2d 438 (6th Circuit 1989) ................................................................11

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986)..........................................................7

*Silber v. Mabo*, 18 F.3d 1449 (9th Cir. 1994).........................................................................17

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .................15

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,

    79 F.R.D. 571 (ED PA 1978) ..........................................................................................11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................. 5, 6, 10, 11

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) .....................9

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996) ...................................................10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)................................................5

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)..................................16

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................................14, 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)..............................................................6

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005) ...........................................7, 8

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188 (9th Cir. 2001) ...............................8

**RULES**

Fed. R. Civ. P. 23............................................................................................................. passim

**TREATISES**

*Manual for Complex Litigation Second* § 30.44 (1985)..............................................................5

**OTHER AUTHORITIES**

*Findings of the Study of California Class Action Litigation*, 2000-2006 ..................................14

**TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

Please take notice that on June 27, 2019, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the United States Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, CA 95113, Plaintiff ANDREW QUIRUZ ("Plaintiff") will and hereby does move the Court for an order granting preliminary approval of the STIPULATION OF SETTLEMENT OF CLASS ACTION CLAIMS AND RELEASE OF CLAIMS ("Agreement" or "Stipulation" herein) reached with Defendants Archer-Daniels-Midland Company ("ADM" or "Defendant ADM"), and Specialty Commodities, Inc. ("SCI" or "Defendant SCI"), (ADM and SCI are sometimes referred to herein as "Defendants"), a true and correct copy of which is attached as Exhibit A to the Declaration of H. Scott Leviant submitted herewith. Specifically, Plaintiff moves for an order to:

1.   grant preliminary approval of the terms of the Agreement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement; the amount of distributions to class members; the procedure for giving notice to class members; the procedure for opting out of the settlement; and the amounts allocated to the Class Representative's service payment, settlement administration costs, and Class Counsel's attorneys' fees and costs;

2.   preliminarily certify for settlement purposes the Settlement Classes described in the Agreement;

3.   appoint Plaintiff as representative for the Settlement Class;

4.   appoint Setareh Law Group as counsel for the Settlement Class;

5.   approve the use of Simpluris, Inc. as the settlement administrator;

6.   direct that notice issue to members of the Settlement Class as provided in the Agreement; and,

7.   schedule a final approval and fairness hearing on a date approximately 155 days after preliminary approval (December 5, 2019 is proposed) to consider whether the Agreement should be finally approved as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure and to rule on the motion for attorneys' fees, costs and service award submitted by Plaintiff.

Plaintiff's motion is based on this Notice, the following Memorandum of Points and Authorities, the Declaration of H. Scott Leviant submitted herewith, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Andrew Quiruz ("Plaintiff") filed a lawsuit on behalf of (1) California employees of Defendants, alleging various wage and hour law violations under state and federal law, and (2) applicants for employment by Defendants who were subject to any background, credit, consumer, or investigatory check or report.  Defendants dispute these claims, deny liability, and have vigorously defended the action to date.

After discovery, the exchange of data, and an arms'-length mediation conducted by a third-party mediator, Plaintiff and Defendants (Plaintiff and Defendants collectively referred to herein as the "Parties") reached a proposed class action settlement valued at a total of $1,500,000 for approximately 20,000 putative class members, in several defined subclasses (362 in the California wage and hour sub-classes).

Both Parties believe the Settlement to be fair and reasonable, to adequately reflect the potential liability, and to be the result of thorough factual and legal analyses and arms-length negotiations.  Through this Motion, Plaintiff requests certification of a Settlement Class pursuant to Fed. R. Civ. P. 23 and preliminary approval of the proposed class action settlement.

## II.  BACKGROUND

On May 3, 2017, Plaintiff filed a lawsuit in California state court.  (Declaration of H. Scott Leviant ["Leviant Decl."], at ¶ 4.) The suit alleged violation of California and federal wage and hour laws and violation of the federal Fair Credit Reporting Act ("FCRA") and related state law consumer protection statutes.

Defendants removed the lawsuit to the Northern District of California on June 7, 2017. (Leviant Decl., at ¶ 5.)  Thereafter, Plaintiff filed a First Amended Complaint which added a claim for relief arising under the California Labor Code Private Attorneys General Act ("PAGA") (Lab. Code § 2698, et seq.).

The Parties have conducted significant investigation of the facts and law during the prosecution of this Litigation. (Leviant Decl., at ¶ 6.)  Such investigation has included formal and informal written discovery; the pre-mediation exchange of requested information; and, numerous communications between the Parties to identify and assess the issues. (*Id.*)

The Parties attended a day-long mediation session on April 12, 2018, with Michael Dickstein, a well-respected mediator with considerable experience in mediating wage and hour class actions.  The mediation resulted in the Settlement described herein. (Leviant Decl., at ¶ 7.)

The Agreement is intended to result in the creation of a settlement class comprised of members of several sub-classes defined below.  (Leviant Decl., at ¶ 8.) There are approximately 20,000 total Settlement Class Members, in various sub-classes.[1]  (*Id.*)

Solely for the purpose of settling this case, the parties agree that the requirements for establishing class and collective action certification with respect to this class have been met and are met.  (Leviant Decl., at ¶ 9.)  If this Settlement is not approved by the Court for any reason, Defendants reserve all rights to contest class and/or collective action certification, as well as the merits.  (*Id.*)  This Agreement, if approved by the Court, will result in the termination with prejudice of the litigation through the entry of the Judgment, and the release of all Released Claims for all Class Members including all within the class definition who have not elected to exclude themselves from the Settlement Class.  (*Id.*)

## III.   SUMMARY OF SETTLEMENT TERMS

The full terms of the settlement are set forth in the Agreement.  The primary material terms are as follows:

      (a)    The Settlement Class includes members of the following sub-classes:  California Non-Exempt Employee Subclass, the California Exempt Employee Subclass, and the FCRA Subclass.  (Agreement, Definitions, ¶¶ C, D, and S.)

---

[1] The total number of Settlement Class Members is not a particularly helpful figure in this particular settlement.  The FCRA Subclass has 20,000 members individuals in it, but after evaluating the disclosure forms used, Plaintiff's Counsel concluded that the background check claims carried *exceedingly* high risk of loss for Plaintiff.  The approximate number of employees impacted by alleged wage and hour violations, 362, is significantly more meaningful.

(b)    Defendants agree that $1,500,000.00, known as the "Total Settlement Amount" ("TSA" herein), represents the maximum amount that they will pay out under this Agreement, inclusive of the following: (a) payments to participating Settlement Class Members; (b) the maximum gross amount for Class Counsel's attorneys' fees to be paid in accordance with the terms set forth in Agreement Paragraph III.K.15, which is $495,000; (c) the maximum gross amount for all of Class Counsel's and the Class Representative's litigation costs and associated expenses, which is capped at $15,000; (d) settlement administration costs, which are estimated not to exceed $30,000; (e) the maximum gross amount for the service award to be made by Defendants to the Class Representative, which is a maximum of $10,000 (Agreement, ¶ III.K.14.h.); (f) all employer- and employee-share payroll and other tax payments; and, (g) payment to the LWDA, equal to $30,000.

(c)    Each Class Member who does not opt out will be paid their share of the settlement.  (Agreement, ¶ K.)

(d)    Class Counsel will not seek an amount greater than $495,000 for attorneys' fees.  (Agreement, ¶ K.15.)

(e)    Class Counsel will not seek an amount greater than $15,000 for litigation costs. (Agreement, ¶ K.15.)

(f)    The Class Representative enhancement award requested will be $10,000. (Agreement, ¶ K.14.h.)

(g)    If a Class Member has not cashed his or her Individual Settlement Payment check within 90 days of issuance, the funds representing the "uncashed checks" shall be transmitted by the Administrator to the California Department of Industrial Relations Unpaid Wage Fund (*see* Cal. Lab. Code § 96.6).  Funds represented by Individual FLSA Settlement Payment checks returned as undeliverable and Individual FLSA Settlement Payment checks remaining un-

cashed for more than 90 days after issuance will revert to Defendants.

(Agreement, ¶ K.14.g.)

(Leviant Decl., ¶ 11.)  A true and correct copy of the STIPULATION OF SETTLEMENT OF CLASS ACTION CLAIMS AND RELEASE OF CLAIMS is attached thereto as Exhibit "A."

## IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

The law favors settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and the rigors of formal litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).   These concerns apply in a case such as this, where allegedly wrongful practices potentially affected numerous employees, in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court.  This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections.  The *Manual for Complex Litigation Second* states at § 30.44 (1985):

> A two-step process is followed when considering class settlements … if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'  This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)].  "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements

1  of Rule 23(a) and Rule 23(b)(3)).

2      At the second stage of the approval process, after class members have had an opportunity to object

3  to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and

4  adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule

5  23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a

6  hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that

7  any class member may object to a proposed settlement.

8      **A.      Plaintiff's Claims Merit Class Action Treatment**

9      At the preliminary approval stage, a plaintiff need only make a "prima facie showing" of the

10  requirements of Rule 23.[2]  In determining the propriety of class certification, a court may not delve into the

11  underlying merits of the claims.  The fundamental question "is not whether . . . plaintiffs have stated a

12  cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."

13  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

14      The Ninth Circuit has established that, when ruling on the propriety of class certification, a district

15  court "is bound to take the substantive allegations of the complaint as true."  *Blackie v. Barrack*, 524 F.2d

16  891, 901 n.17 (9th Cir. 1975).  A court "may not require plaintiffs to make a preliminary proof of their

17  claim; it requires only sufficient information to form a reasonable judgment."  *Baldwin & Flynn v. Nat'l.*

18  *Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).  But it is also true that, in some instances, the "

19  'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*

20  *Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  "[T]he class determination generally involves

21  considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."

22  *Id*.  Applying these standards, this action meets the requirements for certification under Rule 23(a) and

23  Rule 23(b)(3).

24      **1.      Numerosity**

25      Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that

26

27  _____

28  [2] *See*, Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:573 (The Rutter Group 2006).

joinder of all members is impracticable."  In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (numbers alone may be dispositive), but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005).  "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).  *See also, In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact size, but demonstrated that class would "obviously be sufficiently numerous").

In this action, the Class is composed of approximately 20,000 members (mostly FLSA sub-class members), with about 362 members of the Class comprising the California Sub-Classes and members of the FLSA Sub-Class.  (Leviant Decl., ¶ 35.)  It is sufficiently numerous that the individual joinder of all members is impracticable.

### 2.    Commonality and Predominance of Common Issues

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  This commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Plaintiff need not demonstrate that all questions of fact and law are common.  "The existence of shared legal issues with divergent factual predicates is sufficient." *Id*.  Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie,* 524 F.2d at 901 n.17.

In this litigation, all Class Members have shared a common interest in determining Defendants (1) failed to comply with certain statutory requirements set forth in the FCRA relating to obtaining consent for background, credit, consumer, or similar investigatory checks, and (2) failed to comply with certain wage and hour laws for employees within California.

Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Once it is established that common issues of law or fact exist, for Rule 23(b)(3) purposes, the Court next examines whether those common issues predominate. The predominance inquiry focuses on

whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).  When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.  It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *See*, *Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at 613.

There are common issues that may predominate over individual issues in this litigation.  For example: (1) whether Defendants' background check disclosure was a "standalone" disclosure; (2) whether Defendants' disclosure was "clear and conspicuous"; (3) whether any FCRA violation was "wilful"; (4) whether all meal periods and rest breaks were provided in accordance with the requirements of California law; (5) whether employees were paid for all hours worked; and (6) whether Defendants have any viable classwide defenses to the class claims.

### 3.    Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class."  This factor is also construed permissively.  *See Hanlon*, 150 F.3d at 1019-20.  Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Id*. at 1020.  In other words, named plaintiffs need not be "identically situated" with all other class members.  "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The typicality requirement is satisfied where "the named Plaintiffs raise the same Labor Code violations as other putative class members." *Id*.  Here, Plaintiff is raising the same claims as the putative class members and has alleged no other individual claims in this matter.  (Leviant Decl., ¶ 36.)

### 4.   Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class."  Adequacy may be established by the mere fact that counsel are experienced practitioners.  *Hanlon*, 150 F.3d at 1020.

There are no conflicts of interest between Plaintiff and Class Members, and Plaintiff has both shown and expressed his willingness to represent Class Members.  The similarity of the claims asserted and remedies sought by Class Members and Plaintiff do not suggest any divergent interests held by Plaintiff.  Defendants did not assert unique defenses against Plaintiff that they could not assert against any other Class Members.  Also, there are no conflicts with Plaintiff's counsel.

Plaintiff's counsel has substantial class action experience and can adequately represent the Class. They have been appointed class counsel in many wage and hour and FCRA class actions against major employers, and recently obtained an important decision regarding FCRA law in the Ninth Circuit. (Leviant Decl., ¶¶ 21-26.)

### 5.   Superiority

In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine whether a class action is superior: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[3]  Some courts have found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement."  See *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious."  *Elkins v. Equitable Life*

---

[3] Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

*Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares a class action with alternative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that it satisfies the superiority requirement.  *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."  *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.  In *Culinary/ Bartender Trust Fund*, the Ninth Circuit held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly served as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'"  *Id.* at 1163.

The class action is superior here as it is on the only method that will allow Class Members "to pool [their individual] claims which would be uneconomical to litigate individually."  *Id.*

The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class certification.  It is difficult to believe that any Class Members have an interest in individually controlling the prosecution of separate actions, given the sums involved for any one Class Member.  Any Class Member who wants to pursue a separate action can opt out of the Settlement.

Also, it is desirable to concentrate issues in one forum.  The Settlement allows all individuals to resolve similar claims against Defendants through a process that does not even require a claim form.

**B.** **At This Stage, Plaintiff Need Only Establish That the Settlement Falls Within the Range of Reasonableness**

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *See, Staton*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.

As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. *Officers for Justice*, 688 F.2d at 625. Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.*  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest." *Staton*, 327 F.3d at 961.

There is a presumption that the negotiations were conducted in good faith.  Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *In re Armored Car Anti-Trust Litigation*, 472 F. Supp. 1357 (N.D. GA 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. PA 1978).  The fact that settlement results from arms-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997); *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Here, the Parties reached a non-collusive settlement after exchange of extensive data used to model potential alleged violation rates, and a substantial number of documents representing Defendants' wage and hour polices and practices and background check policies and practices.  The settlement was finally reached after a day of arm's length negotiations before Michael Dickstein, a highly-respected mediator skilled at helping parties attempting to negotiate reasonable settlements in employment-related class actions.  Prevailing at trial presented risk for the class that justified the settlement.  The Agreement falls

well within the range of reasonable outcomes and merits approval under Rule 23(e).  (Leviant Decl., ¶¶ 7-8, 10, 12-19.)

### 1. The Value of the Settlement to Class Members Is Fair, Reasonable and Adequate

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator.  (Leviant Decl., ¶ 7.)  Settlement occurred only after the relevant information was shared prior to mediation (including the content of the notice of credit and other reports and the number of class members subject to them).  The information exchanged was sufficient to permit Plaintiff's counsel to adequately evaluate the settlement. And, notably, approval of a class action settlement does not require that discovery be formal or exhaustive.  *See, e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).  The fact that settlement results from arms length negotiations following "relevant discovery" creates "a presumption that the agreement is fair."  *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claim asserted on behalf of the Settlement Class in this case, there unquantifiable risks that justify a settlement in an amount above the minimum statutory recovery for an FCRA matter. These risks include, but are not limited to: (i) the risk that Plaintiff would be unable to establish liability for allegedly unpaid straight time or overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC*  2014 WL 205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial); (ii) the risk that Defendants' challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal. 4th at 14 & fn. 28 (*c*iting Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition); (iii) the risk that uncertainties pertaining to the ultimate legality of Defendants' policies and practices could preclude class-wide awards of statutory penalties under Labor Code §§ 203 and 226(e); (iv) the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; (v) the risk that any civil penalties award under the PAGA could be reduced by the Court in its discretion, see Labor Code § 2699(e)(1); (v) the risk that Plaintiff would be

unable to establish liability, including that the Plaintiff could not establish willful violation of the FCRA; (vi) the risk that Defendants' challenged employment policies might not ultimately support class certification or a class-wide liability finding; (vii) the risk that uncertainties pertaining to the ultimate legality of Defendants' form could preclude recovery or class-wide awards of statutory penalties; (viii) the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages; and (ix) the risk that lengthy trial or appellate litigation could ensue over any of the above issues.  Defendants strongly deny any liability and the propriety of class certification for any reason other than settlement.  (Leviant Decl., ¶¶ 15.)  Continued litigation of this lawsuit presented Plaintiff and Defendants with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the Settlement Class Members.  (Leviant Decl. ¶¶ 12-19.)  The settlement amount is, of course, a compromise figure.  (Leviant Decl. ¶ 16.)  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendants.  (*Id*.)  Moreover, each Settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. (*Id*.)

The Class Settlement Amount is fully consistent with any risk at this stage in the litigation.  While Plaintiff would certainly have preferred to recover even more (and Defendants would have preferred to pay far less or zero), this outcome is in line with a carefully constructed estimate of the current fair value of the case.  (Leviant Decl., ¶ 17.)  On that basis, it would be unwise to pass up this settlement opportunity.  Again, the settlement amount falls *within* the statutory damages range, not below it.  (*Id*.)

After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable.  (Leviant Decl., ¶ 18.)  For example, the estimated exposure for meal period violations was calculated by Class Counsel to be $1,800,000.  With risk factor discounts for certification (0.20) and liability proof (0.35), the value of that claim is estimated by Class Counsel to be approximately $180,000.  A similar approach applies to the rest break claim, valued after risk reductions at no more than $210,000.  Performing similar risk-adjusted valuations for all wage and hour claims yields a total value in the range of $800,000 to $1,200,000 (depending on the numerical degree of risk assigned to certification

and liability proof). (Leviant Decl., ¶ 18.)  The *net* recovery to the members of the California Non-Exempt

Employee Subclass is nearly $2,000 per member.  (*Id*.)  The FCRA claim was separately analyzed.

Initially, Plaintiff believed that an older form was used for checks occurring within the statutory period.

However, the actual form used by Defendants has little in the way of objectionable content.[4]  The risk of

pursuing this claim was nearly insurmountable.  Thus, the net allocation of $15 per background check,

when the penalty available could be as low as $100, is, in actuality, a very good result.  (Leviant Decl., ¶

18.)

    Considering the statutory framework and risks, this result here is fully supportable as reasonable.

(Leviant Decl., ¶ 19.) Certification rates are lower than conventional wisdom holds.  *See, e.g.*, H. Scott

Leviant, *Second Interim Report on class actions in California sheds new light on certification* (February

19, 2010), www.thecomplexlitigator.com, available at http://www.thecomplexlitigator.com/post-

data/2010/2/19/second-interim-report-on-class-actions-in-california-sheds-n.html; *see also*, *Findings of the*

*Study of California Class Action Litigation*, 2000-2006, available at

http://www.courtinfo.ca.gov/reference/documents/class-action-lit-study.pdf (finding, as part of a study

conducted by the Judicial Council of California, at page 5, and in Table 9, at page 15, that only 21.4% of

all class actions were certified either as part of a settlement *or* as part of a contested certification motion).

    By obtaining reasonable value for the claims in light of the risks of litigation, Plaintiff clearly

achieved a fair settlement that merits approval.

### 2.    The Agreed Upon Fees and Costs Are Reasonable

    The compensation sought for Plaintiff's counsel is also fair and reasonable.  The Ninth Circuit has

directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes

of calculating common fund attorneys' fees, the courts should begin with a "benchmark" percentage of the

total fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v.*

*Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*,

---

[4] Plaintiff's counsel believe they are well qualified to evaluate this relatively obscure claim, having litigated and resolved scores of such cases and having just obtained an appellate decision clarifying the "standalone" and "clear and conspicuous" requirements imposed on background check disclosure forms. *Gilberg v. California Check Cashing Stores, LLC*, Slip op. (9th Cir. Jan. 29, 2019).

904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the risks overcome,

the benefits obtained and the work necessary to achieve those results supports such an adjustment of the

benchmark.

Courts in this District have recognized that fee awards in class action frequently exceed the

benchmark of 25% in the Ninth Circuit:

> The percentage of the Settlement Fund that Lead Counsel seeks is slightly in excess of the benchmark of 25% established by the Ninth Circuit. *See, e.g., Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir.2000). However, in most common fund cases, the award exceeds that benchmark. *Activision,* 723 F.Supp. at 1377–78 (surveying securities cases nationwide and noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30% ...."); *see also Ikon Office Solutions,* 194 F.R.D. at 194 ("The median in class actions is approximately twenty-five percent, but awards of thirty percent are not uncommon in securities class actions."). The *Activision* court concluded that, where a court adopts the percentage method, "absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." 723 F.Supp. at 1378. Plaintiffs provide substantial authority reflecting the same trend. Mot. for Fees at 12–13.

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047–48 (N.D. Cal. 2008).  Thus, as an alternative

approach to a lodestar method, a thirty percent fee award would be entirely consistent with a percentage-

based award in a common fund case that includes the risk factors discussed herein, and one third is

supportable in light of the quality of the result and the unsettled legal questions surrounding this matter.

Here, the Total Settlement Amount is $1,500,000.00.  Plaintiff's counsel has agreed to seek no

more than $495,000 in fees (thirty-three percent), which is appropriate in light of the quality of the result

and does not deviate appreciably from the Northern District's customary award.  (Leviant Decl., ¶ 10.)

Plaintiff's counsel also requests actual costs incurred and paid without reimbursement in the litigation of

this Action, not to exceed $15,000.00.

The Ninth Circuit has recognized that the lodestar method "creates incentives for counsel to spend

more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar

method does not reward early settlement."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir.

2002).  The Ninth Circuit has thus cautioned that, while a lodestar method can be used as a cross check on

the reasonableness of fees based on a percentage of recovery method if a district court in its discretion

chooses to do so, a lodestar calculation is not required and it did "not mean to imply that class counsel

should necessarily receive a lesser fee for settling a case quickly."  *Id.*

The fee requested by Plaintiff's counsel represents the fair market value of their labor, and it *is* fair that every class member who benefits from the opportunity to claim a share of the settlement pay his or her pro rata share of attorney's fees.  The regular contingent fee contract of Plaintiff's counsel provides for attorney's fees between 35% and 40% of any recovery obtained for the client. It would be unfair to compensate Plaintiff's counsel at any lesser rate than the amount requested because the value of their labor is consistent with the requested fee.

Finally, as required by *In re Mercury Interactive*, 816 F.3d 988 (9th Cir. 2010), Plaintiff will file a motion for fees and costs after the Court sets a hearing date for Plaintiff's Motion for Final Approval of Class Action Settlement with sufficient time for the Class to comment upon it if desired.

### 3.     The Service Award Is Reasonable

Service awards serve to reward the named plaintiff for the time and effort expended on behalf of the class, and for exposing himself or herself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 award).

Here, Plaintiff's counsel requests that the Court grant Plaintiff an incentive award of $10,000.  The amount of the service award is reasonable given the risks undertaken by Plaintiff.  Taking the risk of filing a lawsuit against an employer deserves reward.  Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action, including travelling to and participating in the day-long mediation.  Plaintiff worked diligently with counsel to prepare the action and conferred with counsel regarding settlement negotiations.  (Leviant Decl., ¶ 32.) The requested amount is reasonable.[5]

---

[5] A Declaration from Plaintiff will be submitted in conjunction with a final approval motion, assuming the Court grants preliminary approval of this proposed settlement.  At this time, no fee award or service payment is being authorized, so the Court need not consider whether such requests would

1

### 4.      The Class Notices

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."  *Silber v. Mabo*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

Here, the Parties have agreed to provide notice through first class mail to class members, whose last known addresses are known to Defendants.  If any notices are returned with new forwarding addresses, the administrator will re-mail the Notice to the current address.  This method of notice clearly suffices. ***Moreover, Class Members will receive a reminder postcard to advise them again of the response deadline***.

Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice.  The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- that a class member may enter an appearance through counsel;
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed notice attached as Exhibit 1 to the Agreement complies fully with Rule 23(c)(2)(B). (Leviant Decl., Exhibit "1" attached to Exhibit "A".)  Courts routinely approve class notices even when they provide only general information about a settlement.  *See*, *e.g*., *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" sufficient); *In re*

---

ultimately be approved in the proposed amounts.  Rather, so long as the settlement as a whole falls within the range of reasonableness, that is sufficient.  This settlement does.

*Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally.")  The class notice drafted by the Parties exceed the "general information" threshold, providing more than adequate notice about the Settlement.

**V.      THE COURT SHOULD SCHEDULE A FAIRNESS HEARING**

The last step in the settlement approval process is the fairness hearing, where the Court makes a final determination about the propriety of settlement.  Plaintiff requests that the fairness hearing in this case be scheduled for a date approximately 155 days after issuance of the Court's Order granting preliminary approval of the Settlement.  Under the Settlement, the Settlement Administrator will mail out class notices approximately 42 days after preliminary approval (addresses will be delivered to the Administrator within 21 days and the Notice will mail within 21 days), and class members have 45 days after mailing of the notice to submit exclusions or objections (plus an additional 15 days for re-mailed notices).  Since the final approval hearing must be held at least 35 days after the filing of the final approval motion, Plaintiff proposes that the final approval hearing should be scheduled for December 5, 2019, or the first available hearing date thereafter (allowing Plaintiff's counsel approximately 21 days to prepare and file the Motion for Final Approval after the notice period ends and assuming no significant delay between the hearing of this motion and the issuance of an Order granting preliminary approval).

**VI.     CONCLUSION**

Plaintiff negotiated a settlement that resolves claims and recovers money for many hundreds of California Sub-Class Members, as well as the FCRA Sub-Class Members nationwide.  This settlement is fair and reasonable, especially given the claims and the potential defenses to them and to class certification.  Plaintiff asks the Court to grant preliminary approval of the settlement and adopt the proposed order submitted herewith.

Respectfully submitted,

Dated: February 14, 2019             **SETAREH LAW GROUP**

By: _____

Shaun Setareh
H. Scott Leviant

Attorneys for Plaintiff