Shaun Setareh (SBN 204514)
  shaun@setarehlaw.com
William M. Pao (SBN 219846)
  william@setarehlaw.com
Alexandra R. McIntosh (SBN 320904)
  alex@setarehlaw.com
SETAREH LAW GROUP
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
ANDREW QUIRUZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREW QUIRUZ, on behalf of himself, all others similarly situated,<br><br>     *Plaintiff*,<br><br>     vs.<br><br>SPECIALTY COMMODITIES, INC., a North Dakota corporation; ARCHER DANIELS MIDLAND COMPANY, a business entity form unknown; and DOES 1 through 100, inclusive,<br><br>     *Defendants*. | Case No. 5:17-cv-03300-BLF<br><br>Assigned For All Purposes To The Honorable Beth Labson Freeman, Courtroom 3<br><br>**PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHAUN SETAREH; [PROPOSED] ORDER**<br><br>[Filed Concurrently with the Declaration of Shaun Setareh and [Proposed] Order]<br><br>Date:     April 2, 2020<br>Time:    9:00 a.m.<br>Place:   Courtroom 3<br><br>Action Filed:     May 3, 2017<br>Date of Removal:  June 7, 2017 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 2, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, California 95113, Plaintiff ANDREW QUIRUZ ("Plaintiff") will and does hereby move this Court to: (1) grant Plaintiff leave to file for settlement purposes the proposed Second Amended Complaint submitted herewith, which adds a Fair Labor Standards Act ("FLSA") claim on behalf of Plaintiff and a proposed putative California FLSA Collective (described in the accompanying memorandum); (2) conditionally certify a settlement Class and California FLSA Collective; (3) preliminarily approve the parties' proposed class and FLSA collective action settlement (the "Settlement"); (4) appoint Plaintiff as the Class Representative, his counsel as the Class Counsel, and Phoenix Settlement Administrators, as the Settlement Administrator; (5) approve the forms of Class Notice[1] and proposed timeline for administration; and (6) schedule a hearing on the final approval of the Settlement for September 10, 2020, or as soon thereafter as the Court is available.  This motion is made on grounds that the Settlement is fair, adequate and reasonable and within the range of possible final approval.

This Motion is based upon this First Amended Notice of Motion and Motion for Preliminary Approval of Class and Collective Action Settlement and Certification of Settlement Class; the accompanying Declaration of Shaun Setareh, accompanying exhibits, as well as other pleadings and papers on file and such further evidence and arguments as may be presented at the hearing.


DATED:  December 6, 2019                    SETAREH LAW GROUP


                                            */s/ Shaun Setareh*
                                            SHAUN SETAREH
                                            Attorneys for Plaintiff
                                            ANDREW QUIRUZ

---

[1] The Class Notice also provides notice of the FLSA collective action settlement, but is referred to as a "Class Notice" rather than a "Class and Collective Action Notice" to avoid undue complexity.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND BACKGROUND[1]

This motion seeks preliminary approval of the class and collective action settlement of this wage-and-hour, Fair Credit Reporting Act ("FCRA") (15 U.S.C. §§ 1681 *et seq.*), and other background check law action between Plaintiff ANDREW QUIRUZ ("Plaintiff"), on behalf of himself and the Class Members below, and Defendants SPECIALTY COMMODITIES, INC. ("SCI") and ARCHER DANIELS MIDLAND COMPANY ("ADM") (both referred to as "Defendants").

ADM is one of the world's largest agricultural processors and food ingredient providers. *See* https://www.adm.com/our-company. SCI is a specialty food importer, processor and distributor owned and operated by ADM. Plaintiff, a former warehouse worker employed by SCI, alleged in summary that the Defendants: (a) failed to pay him and all *non-exempt employees of Defendants in California* for all hours worked and at the correct rate of pay, to provide them with compliant meal periods, rest breaks, and wage statements, and to pay their final wages on time, in violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201 *et seq.*) and California law; (b) failed to provide *exempt employees of Defendants in California* with compliant wage statements or timely paid final wages under California law; and (c) obtained background checks as to *employees and applicants nationwide* (regardless of whether non-exempt or exempt) using a non-compliant disclosure form, in violation of the FCRA and California background check laws. Plaintiff also alleged that Defendants violated the California Unfair Competition Law ("UCL") (Bus. and Prof. Code § 17200, *et seq.*) and the California Labor Code Private Attorneys General Act of 2004, as amended ("PAGA") (Lab. Code §§ 2698 *et seq.*). Defendants strongly deny Plaintiff's allegations, deny any liability, and deny that class or collective action treatment is appropriate other than for settlement purposes.

As the result of arm's length negotiations under the supervision of an experienced, highly regarded mediator with expertise in mediating complex wage and hour class and collective actions, the

---

[1] Capitalized terms not defined herein have the meanings in the Amended Stipulation of Settlement of Class and Collective Action and Release of Claims ("Settlement Agreement") filed herewith.

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

parties have reached a fair and reasonable class and FLSA collective action Settlement of Plaintiff's claims.  Pursuant to the Settlement, Plaintiff now requests that the Court enter an order preliminarily approving the Settlement; certifying a Class and a California FLSA Collective for purposes of the Settlement only; appointing Plaintiff as the Class Representative, Setareh Law Group as Class Counsel, and Phoenix Settlement Administrators ("Phoenix") as the Settlement Administrator; approving and directing the mailing of the Class Notices and related materials; and scheduling a final approval hearing on September 10, 2020, or such later date that is available to the Court.

## II.    SETTLEMENT:  SUMMARY OF MATERIAL ELEMENTS

### A.    THE SETTLEMENT CLASS AND CALIFORNIA FLSA COLLECTIVE

The settlement Class and California FLSA Collective and related Class Periods are:

**California Non-Exempt Employee Subclass:**  Any person who was employed by Defendants in an hourly-paid or salaried non-exempt position in California at any time from May 3, 2013 to the date that the District Court grants preliminary approval of the Settlement.  (Settlement, §§ I.C., I.O.)

**California Exempt Employee Subclass:**  Any person who was employed by Defendants in a salaried exempt position in California at any time from May 3, 2016 to the date that the District Court grants preliminary approval of the Settlement. (Settlement, §§ I.D., I.O.)

**FCRA Subclass:**  Any person who (1) was employed by Defendants, or (2) applied for employment with Defendants, at any time from September 26, 2012 to the date that the District Court grants preliminary approval of the Settlement, and in each case for whom a pre-employment background check was conducted at any time from September 26, 2012 up to and including such preliminary approval date.[2]  (Settlement, §§ I.V., I.O.)

**California FLSA Collective:**  Each California Non-Exempt Employee Subclass Member who timely and properly opts into the FLSA claims in the case using an FLSA Opt-In Consent Form pursuant to the terms set forth in the Settlement Agreement, thereby becoming a California FLSA Collective Member.  (Settlement, §§ I.E., I.F., III.K.9).  By definition, the Class Period for the California Non-Exempt Employee Subclass also defines the maximum collective population.

There are an estimated 362 employees in the California Subclasses – approximately 294 in the California Non-Exempt Employee Subclass and 68 in the California Exempt Employee Subclass.  The

---

[2] The FCRA Subclass definition clarifies that it includes only persons for whom a pre-employment background check was performed.  The start of the FCRA Subclass period was revised from May 3 to September 26, 2012, the earliest date for which FCRA Subclass data is reasonably available.

1  nationwide FCRA Subclass has approximately 20,000 members (to be updated prior to the preliminary

2  approval hearing), but Plaintiff submits that that figure is not especially useful in evaluating this

3  Settlement.  As discussed further below, after evaluating the disclosure forms used, Class Counsel

4  concluded that the background check claims carried *exceedingly* high risk, making the 362 Class

5  Members with respect to the wage-and-hour claims significantly more meaningful.

6  **B.     MAXIMUM SETTLEMENT AMOUNT AND DISTRIBUTIONS**

7  **1.     Allocation of Total Settlement Amount**

8       The Settlement provides for a total aggregate "all-in" settlement fund of $1,500,000 (the "Total

9  Settlement Amount").  (Settlement § I.CC.)  After all Court-approved deductions from the Total

10  Settlement Amount, it is estimated that $860,000 will be available to pay the Class Members' class

11  claim settlement shares ("Settlement Shares"), inclusive of (*i.e.*, not in addition to) the Defendants' and

12  the Class Members' respective shares of any applicable payroll taxes.  (*Id.* § III.K.15.a, b, d.)

13  Settlement Shares for Class Members will be calculated as follows:  (1) $510,000 shall be paid to the

14  California Non-Exempt Employee Subclass, allocated across subclass members based on their

15  respective individual workweeks worked during the Class Period; (2) $50,000 shall be paid to the

16  California Exempt Employee Subclass, allocated across subclass members based on their respective

17  paystubs received during the Class Period; and (3) $300,000 shall be allocated to the FCRA Subclass,

18  divided equally among such subclass members.  (*Id.*)  The Settlement Share for each Class Member in

19  the California Non-Exempt and Exempt Employee Subclasses, respectively, will be based on his or her

20  individual workweek (Non-Exempt) or paystub (Exempt) count, divided by the total workweeks or

21  paystubs, as applicable, for all such respective Subclass Members.  If more than $860,000 remains after

22  all other parts of the Total Settlement Amount are paid (*e.g.*, the Class Counsel Award), the foregoing

23  subclass amounts will be proportionally increased on a pro-rata basis. (*Id.* §§ III.K.15.a, b, d, e.)

24       An additional aggregate total of $10,000 is payable to the California Subclasses (both Exempt

25  and Non-Exempt), constituting their share (25%) of the $40,000 "PAGA Payment" allocated to civil

26  penalties under PAGA.  (*Id.* § III.K.16.)  The $860,000 of Settlement Shares plus the California

27  Subclasses' $10,000 portion of the PAGA Payment together constitute the "Aggregate Class Payment

28  Amount" under the Settlement Agreement, and is so named because it represents the aggregate gross

1    amount payable to the Class Members for their Rule 23 and PAGA claims.  (*Id.* § I.DD.)

2         In addition to the $870,000 Aggregate Class Payment Amount, another $50,000 (the "California

3    FLSA Collective Settlement Amount") is allocated to pay separate consideration to each California

4    Non-Exempt Employee Subclass Member (using the same workweek-based allocation method as

5    above, and again inclusive of any applicable employee- and employer-shares of payroll taxes) who

6    timely and properly opts into the California FLSA Collective using an FLSA Opt-In Consent Form,

7    thereby becoming a California FLSA Collective Member and granting an FLSA Release.  (*Id.* §

8    III.K.15.c; 29 U.S.C. § 216(b) (opt-in procedures).

9         Together, the Aggregate Class Payment Amount and California FLSA Collective Settlement

10   Amount constitute an expected $920,000 out of the $1,500,000 Total Settlement Amount.

11        As noted, the Settlement also provides for a $40,000 PAGA Payment from the Total Settlement

12   Amount, of which $30,000 is payable to the California Labor and Workforce Development Agency

13   ("LWDA") and, as referenced above, $10,000 total is payable to the California Non-Exempt and

14   Exempt Employee Subclasses.  (Settlement § III.K.17.)  The Settlement does not include a "PAGA

15   Subclass" definition as a distinct concept because the PAGA Payment is paid to the members of the

16   foregoing California Subclasses (and the LWDA), rendering a distinct "PAGA Subclass" unnecessary.

17   (*Id.* § I.JJ.)  Class Counsel shall give any required notice to the LWDA.  (*Id.* § III.K.17.)

18        The Total Settlement Amount also includes:  (a) the Class Representative payment of $10,000

19   to Plaintiff for having prosecuted the Action and undertaken related risks (Settlement, § III.K.15.i); (b)

20   the Class Counsel Award of attorneys' fees not to exceed $460,000 (approximately thirty-one percent

21   (31%) of the Total Settlement Amount) plus costs not to exceed $15,000, to compensate Class Counsel

22   for all work performed and remaining in connection with the Settlement, including without limitation

23   documenting and administering the Settlement and securing Court approval (*Id.* § III.K.16); and (c) the

24   fees and expenses of the Settlement Administrator, not to exceed $65,000 (*Id.* § III.K.18.).

25        For the Court's convenience, a Settlement payment summary chart is as follows:

26   ///

27   ///

28   ///

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

| | | |
|---|---|---|
| **Aggregate Class Payment Amount:** | **$870,000** | |
| • CA Non-Exempt Employee Subclass | $510,000 | |
| • CA Exempt Employee Subclass | $50,000 | |
| • FCRA Subclass | $300,000 | |
| • CA Subclasses' Share of PAGA Payment | $10,000 | |
| **CA FLSA Collective Settlement Amount:** | **$50,000** | |
| **SUBTOTAL OF PAYMENTS TO CLASS AND COLLECTIVE MEMBERS** | | **$920,000** |
| **Non-Class/Non-Collective Payments:** | | |
| • PAGA Payment to LWDA | $30,000 | |
| • Class Rep Service Award | $10,000 | |
| • Class Counsel Fees | $460,000 | |
| • Class Counsel Costs | $15,000 | |
| • Settlement Admin Fees and Costs | $65,000 | |
| **SUBTOTAL OF NON-CLASS/NON-COLLECTIVE PAYMENTS** | | **$580,000** |
| **TOTAL SETTLEMENT AMOUNT (inclusive of payroll taxes)** | | **$1,500,000** |

(Settlement §§ I.K, W, CC, DD, III.B, III.K.15-18.)

## 2. Average Settlement Recoveries

Each of the approximately 362 California Subclass Members will receive a pro-rata share of the $10,000 employee-share PAGA Payment equal to about $27.62 (calculated as $10,000 (25% of the PAGA penalties) ÷ 362 California Subclass Members) = $27.62.) (Settlement § III.K.17.)

The average recovery for each California Non-Exempt Employee Subclass Member with respect to the wage-and-hour claims (including his or her applicable eligible share of the California FLSA Collective Settlement Amount assuming each such Subclass Member also opts into the California FLSA Collective, and pro-rata share of the PAGA penalties) is approximately $1,932.38 (*i.e.*, $510,000 (allocated to the California Non-Exempt Employee Subclass) + $50,000 (allocated to California Non-Exempt Employee Subclass members who opt into the California FLSA Collective) = $560,000 ÷ 294 (non-exempt employees) = $1,904.76 + $27.62 = $1,932.38.) The average recovery for each California Exempt Employee Subclass Member with respect to the wage-and-hour claims (including pro-rata PAGA share) is approximately $762.91 (*i.e.*, $50,000 (allocated to the California Exempt Employee Subclass) ÷ 68 (exempt employees) = $735.29 + $27.62 = $762.91).

The average FCRA Subclass member recovery is approximately $15 ($300,000 ÷ 20,000

1  members), which Plaintiff believes is reasonable given that the penalty available could be as low as

2  $100 per person.  As noted, Plaintiff learned in discovery that the actual disclosure form used by

3  Defendants has little in the way of objectionable content, making this claim nearly unwinnable.

4       **C.    SCOPE OF THE CLASS MEMBER RELEASES**

5            Releases in the Settlement Agreement shall govern, and are summarized below:

6       **California Non-Exempt Employee Subclass:**  California Non-Exempt Employee Subclass

7  members release the Released Parties[3] from all known and unknown claims arising on or before the

8  Preliminary Approval Date (the "Release Period") relating to:  (a) claims for unpaid wages

9  (including claims for regular wages, overtime, final wages, and meal period and rest period

10  premiums), interest, penalties (including waiting time and wage statement penalties), and all claims

11  under various Labor Code sections and Industrial Welfare Commission Wage Orders relating to the

12  Action; (b) UCL claims relating to any claims, facts or violation of law alleged in this Action; (c)

13  PAGA claims; and (d) claims for attorneys' fees and costs and any other remedies available at law

14  or in equity reasonably flowing from the Action. (Settlement, § III.C.1.)

15       **California FLSA Collective:**  California Non-Exempt Employee Subclass Members who

16  timely and properly opt into the California FLSA Collective release the Released Parties from all

17  known and unknown claims arising during the Release Period related to:  (a) all FLSA claims that

18  were or could have been alleged in this Action (including claims for regular wages, minimum

19  wages, overtime, interest and penalties including claims for liquidated damages); and (b) claims for

20  attorneys' fees and costs and any other remedies available at law or in equity reasonably flowing

21  from the Action (together, the "Released FLSA Claims"). (Settlement § III.C.2.)  No other Class

22

23  ────────────────

24  [3] "Released Parties" means Defendant ADM and Defendant SCI, any of their respective

25  subsidiaries, predecessors, successors, affiliates, and otherwise related entities, and any of their

26  respective past, present and/or future, direct and/or indirect, officers, directors, employees, agents,

27  representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent

28  companies, divisions, assigns, and joint venturers.  (Settlement § I.SS.)

Members (including any California Non-Exempt Employee Subclass Members who do not timely and properly opt into the California FLSA Collective) shall release Released FLSA Claims. (*Id.*)

**California Exempt Employee Subclass:** California Exempt Employee Subclass members release the Released Parties from all known and unknown claims arising during the Release Period related to: (a) claims for inaccurate wage statements under Labor Code Section 226; (b) PAGA claims; and (c) claims for attorneys' fees and costs and any other remedies available at law or in equity reasonably flowing from the Action. (Settlement, § III.C.3.).

**FCRA Subclass:** FCRA Subclass members release the Released Parties from all known and unknown claims arising during the Release Period related to: (a) claims under the Fair Credit Reporting Act and any other state, local and other laws relating to background checks, consumer credit reports, or applications for employment; and (b) claims for attorneys' fees and costs and any other remedies available at law or in equity reasonably flowing from the Action. (Settlement, § III.C.4.).

**General Release By Plaintiff:** In light of the special benefits received by Plaintiff including the Class Representative Service Award and his execution of the Settlement Agreement, Plaintiff grants the Released Parties a general release of all known and unknown claims (including a waiver and release of rights and claims pursuant to California Civil Code § 1542) which exist or may exist on his behalf on or prior to the date of the Settlement Agreement. (Settlement § III.C.5.); *see* June 27, 2019 Hrg. Trans. at 19:13 (the Court noting it acceptable for Plaintiff to give a broader general release).

## D.     NOTICE PROCEDURES

If appointed as Settlement Administrator by the Court, Phoenix will mail to all Class Members a Class Notice Packet (completed to reflect the order granting preliminary Settlement approval) using their last-known address provided by Defendants. (Settlement, § III.K.2, 4.). There will be two forms of the Class Notice: one for California Non-Exempt Employee Subclass Members informing them (in relevant part) of their eligibility to opt into the California FLSA Collective using an FLSA Opt-In Consent Form, which shall be enclosed with each such Class Notice; and a different form for all other Class Members (*i.e.*, who are not eligible to opt into the California FLSA Collective), that will not include an FLSA Opt-In Consent Form. (*Id.* § I.HH, III.K.2. & Exh. 1-2.)

Each Class Notice will include information regarding the Action and a summary of the

1   Settlement's principal terms, including applicable Subclass and California FLSA Collective

2   descriptions.  (*Id.* § III.K.2.)  Each Class Notice also will inform the Class Members of their rights

3   and the manner and deadline to (1) dispute their Class Member Settlement Information Sheet (*e.g.*,

4   workweeks worked or paystubs received during the applicable Class Period), (2) object to the

5   Settlement, (3) elect not to participate in the Settlement, and (4) in the case of California Non-Exempt

6   Employee Subclass Members, opt into the California FLSA Collective using the FLSA Opt-In Consent

7   Form.  (*Id.*, Exh. 1-2.)  The Class Notice will also inform Class Members of the claims to be released.

8   (*Id.*)  The Class Notice, Settlement Agreement and other documents pertinent to Plaintiff's Motion for

9   Preliminary Approval shall be made available by Class Counsel online at a website to be created and

10  maintained by the Settlement Administrator at least five (5) weeks prior to the hearing on the Final

11  Settlement Approval Motion.  (*Id.* §§ III.K.2.xiii, III.L.2.)

12          Within 21 calendar days after preliminary approval of the Settlement, Defendants will provide

13  the Settlement Administrator with the Class Members' Data, which will include each Class Member's

14  name, last-known address, and Social Security number; the total individual workweeks and paystubs

15  worked or received, respectively, by each California Non-Exempt or Exempt Employee Subclass

16  Member (as applicable) during the applicable Class Period; and the date any Class Member's

17  employment terminated.  (*Id.* ¶ III.K.1.)  Within 21 calendar days of receiving the Class Members'

18  Data, the Settlement Administrator will send the Class Notice Packets.  (*Id.*, § III.K.2, 4 & Exh. 1-2.)

19          Class Members will have 45 days after the Class Notice Packets are mailed (the "Response

20  Deadline") to dispute the information in the Class Notice, elect not to participate in the Settlement (*i.e.*,

21  exclude himself or herself), including by email, or, in the case of California Non-Exempt Employee

22  Subclass Members, opt into the California FLSA Collective. (*Id.* §§ I.TT, UU, III.K.7, 9, 11.)  Class

23  Members will have until 3 weeks prior to the Final Settlement Approval Hearing to object to the

24  Settlement (including by email).  (*Id.* § III.K.10.)  Within 2 weeks after the objection deadline, Class

25  Counsel will file with the Court a summary of objections received and Plaintiff's responses, and

26  Defendants may file their own responses by such date if they so choose.  (*Id.* § III.L.2.)  Any Class

27  Member who does not exclude him/herself will remain bound by the Settlement (and be paid their

28  applicable Settlement payments).  (*Id.* § III.K.8.)  However, any California Non-Exempt Employee

1   Subclass Member who does not opt into the California FLSA Collective shall not grant an FLSA

2   Release.  (*Id.*, § III.K.8.)[4]

3        Not later than 30 days prior to the Response Deadline, the Settlement Administrator will

4   send a reminder notice to all Class Members who have not responded. (*Id.*§ III.K.5.)  Any Notice

5   Packets returned as non-deliverable by the Response Deadline will be resent via First-Class U.S.

6   Mail to the forwarding address noted. (*Id.*§ III.K.6.)  If no forwarding address is provided, the

7   Settlement Administrator will attempt to find a correct address by skip-trace or other appropriate

8   search, and will then perform a single re-mailing if possible. (*Id.*)  Class Members who receive a re-

9   mailed Notice Packet shall have their Response Deadline extended fifteen (15) calendar days from

10  the original Response Deadline. (*Id.*)

11       If ten percent (10%) or more of the Class Members timely opt out of (*i.e.*, exclude themselves

12  from) the Settlement, Defendants will have the right in their sole discretion to revoke the Settlement by

13  written notice to Class Counsel not later than 7 calendar days after the Settlement Administrator notifies

14  the parties of the number of valid elections not to participate in the Settlement. (*Id.*, § III.M.)

15  **E.    PAYMENT OF SETTLEMENT AMOUNTS**

16       Except as to the payments from the California FLSA Collective Settlement Amount, no Class

17  Member needs to submit a claim.  (*Id.* § III.K.15.)  Checks for payments from the Aggregate Class

18  Payment Amount to the California Non-Exempt and Exempt Employee Subclasses and the FCRA

19  Subclass, including California Subclass shares of the PAGA Payment, will be paid in a single check to

20  the applicable Class Members who do not opt out of the Settlement.  (*Id.* § III.K.15.g.)

21       The Settlement Administrator will pay by separate check the California FLSA Collective

22

23  _____

24  [4] If a California Non-Exempt Employee Subclass Member submits both a notice of objection and an

25  FLSA Opt-In Consent Form, such FLSA Opt-In Consent Form will remain binding unless the Court

26  holds otherwise.  (*Id.* § III.K.9.a.) If any Class Member submits a timely request for exclusion, any

27  notice of objection and/or FLSA Opt-In Consent Form also submitted by such Class Member, if

28  any, shall be disregarded and of no force and effect.  (*Id.* § III.K.7.a.)

Settlement Amount payment to each California Non-Exempt Employee Subclass Member who timely and properly opts-in to the California FLSA Collective.  (*Id.* §§ I.E-F, FF, III.K.9, III.K.15.c, g.)  Any California Non-Exempt Employee Subclass Member who does not do so shall not become a California FLSA Collective Member, release any FLSA claims, or receive a share of the California FLSA Collective Settlement Amount.  (*Id.* §§ I.F, W, QQ, III.C.2, III.K.9, III.K.15.c, g.)

The Settlement Administrator shall send such settlement checks by regular First Class U.S. Mail to Class Members' last known mailing address no later than 25 days after the Effective Date of the Settlement (after, *e.g.*, all appeal periods have run or appeals resolved), and shall advise the recipient that the check(s) will remain valid and negotiable only for 90 days from the date of issuance.  (*Id.*§ III.K.15.g.)  The Settlement Administrator will mail a reminder of the 90-day check cashing period to any Class Members whose check(s) remain uncashed after 45 days.  (*Id.* § III.K.15.g-h.)  Any settlement check shall be void if not cashed within 90 days after issuance except as provided below.  (*Id.*)  If a settlement check is returned as undeliverable within 60 days after issuance, such check(s) will be sent via regular First-Class U.S. Mail to the forwarding address noted. (*Id.*§ III.K.15.h.)  If no forwarding address is provided, the Settlement Administrator will perform a skip-trace or other appropriate search, and will perform a single re-mailing if possible. (*Id.* § III.K.15.h.)  Any Class Member who does not timely cash his or her settlement check(s) shall still be bound by the Settlement's terms, including those pertaining to the Released Claims and any final Judgment. (*Id.* § III.K.15.h.iv.)

The amount represented by any settlement checks that remain uncashed beyond the deadline (including any undeliverable checks for which a valid mailing address could not be located) will be transmitted to the California Division of Labor Standards Enforcement's Unclaimed Wage Fund (see Cal. Lab. Code § 96.6) within 60 days, except that any unclaimed or uncashed increment of the $50,000 California FLSA Collective Settlement Amount (and no other amount) will revert to Defendants within 60 days.[5]  (Settlement § III.K.15.h.iii.)

---

[5] On June 27, 2019, during the hearing on Plaintiff's initial Motion for Preliminary Approval, the Court expressed that it was not concerned with the FLSA reversion.  (Tr. at 17:6-16.)

1    **III.    ARGUMENT**

2        **A.    RULE 23 AND FLSA SETTLEMENT APPROVAL STANDARDS**

3        The law favors settlement, particularly in class actions and other complex cases where

4    substantial resources can be saved by avoiding the time, cost, and rigors of litigation.  *See Newberg on*

5    *Class Actions* 4th (2002) ("*Newberg*") § 11.41 (citing cases); *Class Plaintiffs v. City of Seattle*, 955 F.2d

6    1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  A class

7    action, however, may not be dismissed, compromised, or settled without court approval.  Fed. R. Civ. P.

8    ("Rule") 23(e). The *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") §

9    30.41 describes a three-step settlement approval procedure that courts typically follow:

10       (1)  Preliminary approval of the proposed settlement at an informal hearing;

11       (2)  Dissemination of mailed and/or published settlement notice to all affected class members; and

12       (3)  A "formal fairness hearing," or final settlement approval hearing, at which class members may
         be heard regarding the settlement, and at which evidence and argument concerning the fairness,
13       adequacy, and reasonableness of the settlement may be presented.

14   *Id.* § 30.41; *Newberg*, § 11.22 *et seq.*  Rule 23(e) also applies to settlements before class certification,

15   but in a much lighter form not entailing "the kind of substantive oversight required when reviewing a

16   settlement binding upon the class." *Diaz v. Trust Territory of Pac. Islands,* 876 F. 2d 1401, 1408 (9th

17   Cir. 1989).  Although there has been "some uncertainty" about this holding in the wake of the 2003

18   amendments to Rule 23(e), *see, e.g., Lyons v. Bank of Am., NA,* 2012 WL 5940846, at *1 & n.1 (N.D.

19   Cal. Nov. 27, 2012), courts in this district continue to follow *Diaz* to evaluate proposed settlements and

20   dismissal of putative class claims.  *See, e.g., Tombline v. Wells Fargo, NA,* 2014 WL 5140048, at *2

21   (N.D. Cal. Oct. 10, 2014); *Luo v. Zynga Inc.*, 2014 WL 457742, at **3-4 (N.D. Cal. Jan. 31, 2014).

22       Settlement of an FLSA collective action also requires court approval.  29 U.S.C. § 216(c); *see*

23   *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *Till v. Saks*

24   *Inc.*, 2014 WL 1230604, at *2 (N.D. Cal. Mar. 14, 2014); *Jones v. Agilysys, Inc.*, No. 12-cv-03516

25   SBA, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013); *see also Otey v. CrowdFlower, Inc.*, No.

26   12-cv-05524, at *2 (N.D. Cal. Apr. 15, 2014) ("*Otey I*") (collecting cases applying *Lynn's Food*

27   *Stores*).  "The Ninth Circuit has not established the criteria that a district court must consider in

28   determining whether an FLSA settlement warrants approval." *Otey v. CrowdFlower, Inc.*, 2015 WL

6091741, at *4 (N.D. Cal. Oct. 16, 2015) ("*Otey II*").  For that reason, courts in this district apply the Eleventh Circuit's widely-followed standard set forth in *Lynn's Food Stores*:  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues…that are actually in dispute," the district court may approve the settlement.  679 F. 2d at 1354; *see McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-cv-5243 SBA, 2012 WL 6629608, *2 (N.D. Cal. Dec. 19, 2012).

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (citation omitted).

To grant preliminary approval of a class action settlement, and thus issue settlement notices to the class and schedule a formal fairness hearing, the court need only find that the settlement falls within the range of possible final approval, also described as "the range of reasonableness."  *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App.4th 1085, 1089-90 (1994); *In re Traffic Exec. Ass'n-Eastern Railroads*, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4 *Newberg*, § 11.25.  In sum, preliminary approval of a settlement and notice to the proposed class (or collective) is appropriate:  "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval…." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

## B.    THE SETTLEMENT MEETS PRELIMINARY APPROVAL STANDARDS

The proposed Settlement meets the standards for preliminary approval under Rule 23(e) and the FLSA, including under the Northern District's *Procedural Guidance for Class Action Settlements*.

### 1.    Any Differences Between the Settlement Class and the Class Proposed in the Operative Complaint are Immaterial and/or Reasonable.

The proposed Second Amended Complaint (Setareh Decl., ¶ 43, Exh. 2) specifies the following classes:

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

**FCRA Class:**  All of Defendants' current, former and prospective applicants for employment in the United States who applied for a job with Defendants at any time during the period beginning five years prior to the filing of this action and ending on the date that final judgment is entered in this action.

**ICRAA Class:**  All of Defendants' current, former, and prospective applicants for employment in California, at any time during the period beginning five years prior to the filing of this action and ending on the date that final judgment is entered into this action.

**CCRAA Class:**  All of Defendants' current, former, and prospective applicants for employment in California, at any time during the period beginning seven years prior to the filing of this action and ending on the date that final judgment is entered in this action.

**Specialty Commodities/ADM Class:**  All persons employed by Specialty Commodities, Inc. and/or Archer Daniels Midland Company in hourly or non-exempt positions in California during the Relevant Time Period.

   **Meal Break Sub-Class**: All Specialty Commodities/ADM Class members who worked a shift in excess of five hours during the Relevant Time Period.

   **Rest Break Sub-Class**: All Specialty Commodities/ADM Class members who worked a shift of at least three and one-half (3.5) hours during the Relevant Time Period.

   **Waiting Time Penalties Sub-Class**: All Specialty Commodities/ADM Class members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered.

**Wage Statement Penalties Class**: All persons employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered.

**UCL Class:**  All Specialty Commodities/ADM Class members employed by Defendants in California during the Relevant Time Period.

**FLSA Collective**: All members of the Specialty Commodities/ADM Class members employed by Defendants in California during the period beginning three years before the filing of this action and ending when final judgment is entered.

The Settlement proposes three settlement subclasses: (1) California Non-Exempt Employee Subclass; (2) California Exempt Employee Subclass; and (3) FCRA Subclass.  It also proposes for settlement purposes a California FLSA Collective (comprised, as noted, of any California Non-Exempt Employee Subclass members who opt into the California FLSA Collective).  After analysis of discovery from Defendants, it was determined that invariably all of the employees (in the non-FCRA subclasses) worked at Defendants' California warehouses. (Setareh Decl., ¶ 7.)  As such, and to simplify the Settlement, the parties agreed to the three subclasses defined in the Settlement Agreement.  Moreover, Defendants are paying substantial consideration for the releases given by these subclasses.

2.    __The Expected Claim Rate (Where Applicable) Supports Settlement__.

Plaintiff estimates a 60-70% opt-in claims rate among the California Non-Exempt Employee Subclass with respect to the FLSA claims, but this is insubstantial as the FLSA settlement comprises just $50,000 of the overall Settlement.  Submission of claim forms is not required as to any other aspect of the Settlement.  Thus, virtually all of the $1.5 Million Total Settlement Amount will be paid out.

3.    __The Settlement Was the Product of Informed, Non-Collusive Negotiations__.

The Settlement was reached after informed, arm's-length negotiations between the parties with the help of Michael E. Dickstein, an accomplished mediator with significant experience mediating employment wage and hour class and collective actions.  (Setareh Decl., ¶¶ 7-10.)  Both parties conducted investigation and discovery, including serving multiple sets of interrogatories and comprehensive requests for production to Defendants, allowing the parties to assess the strengths and weaknesses of the case.  Ultimately, the parties agreed that Defendants would produce relevant data and timekeeping records along with information about the Class composition prior to mediation. (*Id.*) Among other things, Plaintiff reviewed Defendants' written policies, including employee manuals and collective bargaining agreements.  Class Counsel also retained an expert who thoroughly reviewed and analyzed payroll and timekeeping data prior to the settlement negotiations to create a reliable damage model detailing the number of possible violations at issue. (*Id.*.)  In addition, Class Counsel interviewed a number of putative Class Members about their experiences with Defendants related to meal and rest breaks. (*Id.*)  This information and analysis was sufficient to permit Class Counsel to adequately evaluate the Settlement. (*Id.*)  After a full-day mediation, the parties were able to reach a settlement. (*Id.*.)  Notably, approval of a class action settlement does not require that discovery be exhaustive. *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strengths and weaknesses of their cases).  The fact that settlement results from arm's-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal., July 18, 1997).

4.    __The Settlement Falls Within the Range of Possible Approval__.

The Settlement falls well within the range of possible approval.  To evaluate this criterion,

1   which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected

2   recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F.

3   Supp. 2d at 1080. "An important consideration in judging the reasonableness of a settlement is the

4   strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."

5   *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). In

6   assessing the strength of the plaintiff's case and the probability for success, "the district court's

7   determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough

8   justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal

9   quotation omitted). There is "no single formula" to be applied, but the court may presume that the

10  parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's

11  likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

12         It should not be surprising that a settlement yields less than what the class could theoretically

13  have recovered at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the

14  very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest

15  hopes"). Importantly, the reasonableness of a settlement is not dependent upon the amount approaching

16  the potential recovery plaintiffs might receive if successful at trial. *See Nat'l. Rural Tele. Coop.*, 221

17  F.R.D. at 527. Indeed, compromise is the very nature of settlement. *See Boyd v. Bechtel Corp.*, 485 F.

18  Supp. 610, 624 (N.D. Cal. 1979). Moreover, courts recognize that there is an inherent "range of

19  reasonableness" in determining whether to approve a proposed settlement, a range which recognizes the

20  uncertainties of law and fact and attendant risks and costs associated with taking any litigation to

21  completion. *See Frank v. Eastman Kodak Co.*, 288 F.R.D. 174, 186 (W.D.N.Y. 2005).

22                    a.    <u>The Settlement is Reasonable Relative to Potential Liability</u>.

23         Following review of the payroll and timekeeping data provided by Defendants and applicable

24  law, Class Counsel determined that the value of their claims before considering statutory and civil

25  penalties was approximately $8 million. (Setareh Decl., ¶¶ 13-21). The following chart provides the

26  estimated potential recovery on a class basis that Plaintiff believes he could reasonably achieve *if he*

27  *were to prevail on **all his non-FLSA** causes of action* (*see* Setareh Decl., ¶ 16):

28  ///

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

**Plaintiff's Estimated Potential Recovery -- Assumptions:**

Wage and Hour Putative Class Members ("PCMs"): 362 (294 non-exempt/68 exempt)

FCRA PCMs: approximately 20,000

| Cause of Action | Estimated Potential Recovery | Calculations for Estimated Potential Recovery |
|---|---|---|
| Meal Period Premiums | $1,911,000 | 294 x 5 (days) x 50% (percentage of PCMs at any time working over 5 hours in a day) x $10.00 x 52 (weeks) x 5 (years), accounting for the limitations period and time until final judgment) |
| Rest Period Premiums | $2,866,500 | 294 x 5 (days) x 75% (percentage of PCMs at any time working over 3.5 hours in a day) x $10.00 x 52 (weeks) x 5 (years) |
| Late Pay (Labor Code § 203) Penalties | $329,400 | $10.00 x 6 (hours per workday) x 183 (former workers as represented by Defendants) x 30 (days), the maximum recovery period |
| Wage Statement (Labor Code § 226) Penalties | $1,200,000 | 300 (workers at any one time) x $4,000 (maximum penalty) |
| FCRA Statutory Penalty | $2,000,000 | 20,000 potential class members x $100 (minimum statutory penalty) |
| **Total Potential Recovery** | **$8,306,900** | |

The Settlement provides for a Total Settlement Amount of $1,500,000 by Defendants – approximately **18.06%** of the Class-wide damages – which is, by any account, a significant amount given the value of the claims at issue. (Setareh Decl., ¶¶ 13-21.) This is an excellent result, well above the amount of many settlements granted final approval by courts within the Ninth Circuit. *See e.g., Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. June 17, 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (3%); *In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. July 29, 2010) (5% of "plaintiff's expert estimated damages").

The average per-person settlement recoveries reconfirm that conclusion. As detailed above, it is

estimated that before taxes the average Class Member will receive approximately **$1,932.38** with respect to the California Non-Exempt Employee Subclass (including their pro-rata share of the PAGA penalties, and assuming that every such Subclass member opts into the California FLSA Collective), and approximately **$762.91** with respect to the California Exempt Employee Subclass (including their pro-rata share of the PAGA penalties). These are substantial per-person sums.

The Settlement remains reasonable when FLSA exposure is also considered. Even assuming that every California Non-Exempt Employee Subclass Member worked an average of one hour off-the-clock every single week for three years (the FLSA maximum limitations period even if everyone opted in) *and* every such hour was worked as overtime – all of which is unlikely – the estimated exposure is approximately $687,960 (1 hour x 52 weeks x 3 years x 294 non-exempt employees x $10.00/hour x 1.5 (overtime rate) = $687,960). As discussed below, establishing liability is likely to be a highly individualized exercise across the nearly 300 California Non-Exempt Employee Subclass Members given that it would depend on the work habits and actions of each individual employee, as well as evidence concerning whether Defendants even had the requisite knowledge of any such purported "off the clock" work. This also impacts certification risks, and explains why the parties allocated $50,000 to the FLSA claims by California Non-Exempt Employee Subclass Members.

The $300,000 FCRA Subclass settlement also is eminently reasonable. As discussed above and below, Plaintiff has learned that Defendants' background check disclosure form was likely legally compliant, rendering the risk of pursuing this claim nearly insurmountable. The Ninth Circuit has held that a settlement's reasonableness should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The FCRA Subclass Members have relatively small amounts of money at stake, as the FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is greater. Here, there are likely no actual damages or a meaningful chance of recovering penalties. Thus, approximately $15 average per background check, *i.e.*, a 15% recovery rate, on a very tenuous claim is a very good result when the penalty could easily be as low as $100.

1    In Plaintiff's view, this is a favorable result given the significant risks with respect to the class

2  FCRA claims, and exceeds the per-person recovery under other approved FCRA settlements.  *See, e.g.*,

3  *Rohm v. Thumbtack, Inc.*, 2017 WL 4642409 (N.D. Cal. Oct 17, 2017) (final approval of claims-made

4  non-reversionary $225,000 settlement with 66,676 class members -- $3.37 per member); *In re Uber*

5  *FCRA Litigation*, 2017 WL 2806698 (N.D. Cal. June 29, 2017) (preliminary approval of claims-made

6  non-reversionary $7.5 million settlement with 1,025,954 class members -- $7.31 per member); *see also*

7  *Nesbitt v. Postmates, Inc.*, San Francisco Superior Court Case No. CGC-15-547146 (Nov. 8, 2017)

8  (final approval of $2,500,000 settlement for 186,988 class members – about $13.37 per member).

9  The 15% FCRA settlement percentage here is also well above the amount of many non-FCRA

10  settlements granted final approval within the Ninth Circuit.  *See, e.g., Stovall-Gusman*, 2015 U.S. Dist.

11  LEXIS 78671, *12-13 (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc. FACTA Litig.*,

12  295 F.R.D. at 453-54 (3%); *In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168, *6 (5% of

13  "plaintiff's expert estimated damages").

14            b.    <u>The Settlement is Reasonable Relative to Litigation Risks</u>.

15    These aggregate and per-person average recoveries are well within the range of reasonableness

16  considering the risks that Plaintiff and the Class face as to both liability and certification, including, *e.g.*:

17            (i)    <u>The risk that Plaintiff would be unable to establish liability for allegedly unpaid straight</u>

18  <u>time and overtime wages under California law or the FLSA</u>.  *See Duran v. US Bank Nat'l Ass'n*, 59 Cal.

19  4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC* 2014 WL 205039 (S.D. Cal.

20  2014) (dismissing certified off-the-clock claims based on proof at trial).  Defendants have contended, for

21  example, that straight time was paid and that overtime was paid or not due and owing across the putative

22  Class.  Defendants also argue that they did not have a purported policy of *not* paying required

23  compensation, but rather a policy of paying compensation and of requiring employees to report any

24  unpaid compensable time, and that any failures to report by employees cannot be legally charged to

25  Defendants.  *See, e.g., Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) (employer not

26  required to pay employees for time spent performing work of which the employer had no knowledge).

27            (ii)    <u>The risk that Plaintiff would not be able to prove liability for alleged failure to provide</u>

28  <u>compliant meal periods and rest breaks</u>.  For example, Plaintiff asserts that Defendants did not enforce

18

1   its written meal period and rest break policies, defaulting to operational practices instead, resulting in

2   Class Members not receiving legally compliant meal and rest periods.  Plaintiff further asserts that

3   Defendants' written meal period and rest break policies were habitually overridden by a "take it when

4   you can" policy that resulted in employees not receiving uninterrupted meal periods and rest breaks due

5   to the pressure of work.  Plaintiff also complains that he was not provided with compliant wage

6   statements (both direct and derivative) and was not paid his final wages on time (derivative).  By

7   contrast, Defendants strongly dispute liability and assert that employees could have taken their meal

8   periods and rest breaks at any time, and that they did not require employees to work through them.  If

9   true, this would defeat liability, and the individualized inquiries that may be necessary to determine

10  liability would complicate certification.  Defendants also assert that their meal period and rest break

11  policies, and their administration thereof, were legally compliant.

12          (iii)    The risk that Plaintiff would not recover waiting time and wage statement penalties

13  pursuant to Labor Code §§ 203 and 226.  For example, there is currently a split of authority as to

14  whether such penalties can be obtained based on failure to provide meal breaks.  *See e.g., Singeletary v.*

15  *Teavana Corporation,* 2014 WL 1760884, *4 (N.D. Cal. May 2, 2014) (noting that "the law in this area

16  is murky at best" and holding that section 203 penalties are not applicable to meal and rest break

17  claims).  Plaintiff also might not prove that Defendants acted with the intent necessary for the alleged

18  claims for penalties under Labor Code sections 203 and 226.  Specifically, section 203 requires that a

19  plaintiff show the employer committed a "willful" violation of the law in withholding wages.  "A good

20  faith dispute that any wages are due will preclude imposition of waiting time penalties under Section

21  203."  8 Cal. Code Regs. § 13520.  Similarly, penalties pursuant to section 226 require a "knowing and

22  intentional" violation.  Defendants contend that they would present several good faith defenses that

23  would preclude a finding of willfulness under section 203.  *See Choate v. Celite Corp.*, 215 Cal.App.4th

24  1460 (2013) (reversing award of section 203 penalties based on good faith defense where underlying

25  wage claim presented issue of first impression).  Any such good faith dispute could preclude penalties.

26          (iv)    The risk that Plaintiff cannot prove liability under the FCRA or other background check

27  laws.  As noted, Class Counsel believed in good faith that Defendants' disclosure forms contained extra

28  language violating the FCRA's standalone disclosure requirement, but concluded that they are likely

legally compliant after reviewing the forms actually used by Defendants during the Class Period.[6]
Plaintiff thus faces significant risk of being unable to prove the requisite "willful" FCRA violation under
15 U.S.C. § 1681n(a), whether as a "knowing" violation or as a "reckless disregard of statutory duty."
*See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007); *Willes v State Farm Fire & Cas. Co.*, 512
F.3d 565, 566 (9th Cir. 2008). *Safeco* also left room for defendants to claim "reasonable construction" or
even "careless construction" of the Act as a defense. *See*, *e.g.*, *Shlahtichman v 1-800 Contacts, Inc.*, 615
F.3d 794 (7th Cir. 2010) (defendant held not liable for statutory damages because the violation arose
from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to
email receipts); *Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371 (3d Cir. 2012) (defendant held not liable
under the FCRA because its practice was merely a "careless interpretation" of the law and is not a
"willful" violation).  Even in the Ninth Circuit, a plaintiff must prove that the employer included terms
beyond the disclosure – something Plaintiff believes he likely cannot prove here. *Syed v. M-I, LLC*, 846
F.3d 1034 (9th Cir. 2014) amended by *Syed v. M-I LLC*, 853 F.3d 492 (9th Cir. 2017).  These defenses
and Plaintiff's burden to show Defendants' "reckless disregard of statutory duty" make it challenging
for Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. at 451
(finding the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness"
under FCRA is a triable issue); *see also Torres v. Pet Extreme*, 2015 U.S. Dist. LEXIS 5136, *13 (E.D.
Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of
willfulness [under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").[7]

---

[6] Plaintiff's counsel believe they are well-qualified to evaluate this claim, having litigated and
resolved scores of such cases and having just obtained an appellate decision clarifying the
"standalone" and "clear and conspicuous" requirements imposed on background check disclosure
forms.  *Gilberg v. California Check Cashing Stores, LLC*, Slip op. (9th Cir. Jan. 29, 2019).

[7] Some courts refused to certify classes in cases seeking statutory penalties on the grounds that liability
"would be enormous and completely out of proportion to any harm suffered by the plaintiff." *See, e.g.*,
*Serna v. Big A Drug Stores, Inc.*, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (citation

1    (v)    The risk that Defendants' challenged employment policies might not ultimately support

2    class or collective certification or a class-wide liability finding. *See*, *Duran*, 59 Cal. 4th at 14 & fn. 28

3    (citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to

4    ultimate viability of proposition).  Defendants vigorously dispute that a class or collective properly

5    could be certified here outside the settlement context, including given manageability concerns.

6    Defendants contended, for example, that myriad highly individualized inquiries would be necessary to

7    prove:  (a) whether a given employee deviated from Defendants' claimed policy of paying overtime for

8    any unrecorded time worked that an employee reports, and failed to so report; (b) whether either

9    Defendant had the requisite knowledge of any given employee's alleged "off-the-clock" time worked

10   (*see, e.g.*, *Morillion*, 22 Cal. 4th at 585); (c) whether a given manager enforced Defendants' written

11   meal period policies or, instead, whether a given employee regularly took their meal periods on a "take

12   it when you can" basis; (d) whether a given site or manager required managerial approval before they

13   could take their meal periods; and (e) whether alleged corporate integration issues at a given location

14   resulted in employees not receiving the full amount of time for rest breaks.  Plaintiff's FCRA and related

15   claims also face a significant risk of summary judgment before certification can be raised.

16   (vi)    The risk that any civil penalties award under PAGA could be reduced by the Court in its

17   discretion, which again could materially impact the Class recovery.  *See* Labor Code section 2699(e)(1).

18   (vii)    The risk that lengthy appellate litigation could ensue as to both liability and certification

19   issues, with associated litigation risk and costs.

20   These considerations further enhance the value of a confirmed settlement as opposed to

21   unpredictable litigation.  To be sure, if the litigation proceeds, Defendants could face significant liability,

22   and Plaintiff maintains that certification would be appropriate.  However, while Plaintiff is reasonably

23   confident of a favorable outcome, there is substantial risk that the evidence and/or legal developments

24

25   ———————————————

26   omitted). While the Ninth Circuit clarified that such matters are properly considered at the merits stage,

27   it noted that the district court may be able to reduce the penalties as "constitutionally excessive" if the

28   plaintiff prevails. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010).

1  could seriously diminish the value of his and the Class' claims.  Defendants are represented by zealous

2  counsel, they strongly deny liability and the propriety of class or collective certification other than for

3  settlement, and they are prepared to vigorously defend against these claims if the Action is not settled.

4          Given the uncertainties of protracted litigation, the Settlement secures a fair, reasonable and

5  sizeable recovery for the Class (including the California FLSA Collective) – which is not

6  inconsequential in these challenging economic times – while mitigating all parties' risk if the case were

7  to proceed. (Setareh Decl., ¶¶ 13-21.)  The Settlement amount is, of course, a compromise figure, and

8  took into account risks related to liability, damages, and certification.  (*Id.*)  Moreover, each settlement

9  Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they

10 have claims that are greater than the benefits they can receive under this Settlement to pursue their own

11 claims. (*Id.*)  Further confirming the fairness of the Settlement, with respect to the wage and hour claims

12 in particular, each Class Member will be compensated based on the number of workweeks they worked

13 (for non-exempt employees) or paystubs they received (for exempt employees) during the applicable

14 Class Period. (*Id.* ¶ 12, Exh. 1.)  As such, the Settlement is fair, reasonable, adequate, and in the best

15 interest of the Class in light of all known facts and circumstances, including the risk of significant delay.

16 (*Id.* ¶ 13-21.)  The Settlement is also in the best interest of judicial efficiency in this case, and eliminates

17 this Action from this Court's calendar.  (*Id.*)

18               **5.       The Releases Are Appropriate Given Plaintiff's Claims.**

19          As described above, as part of the Settlement, Class Members will release all claims based on or

20 arising from the facts pled in the complaint.  (Settlement, § III.C.1-4.)  These released claims

21 appropriately track the breadth of Plaintiff's allegations in the Action. (*Id.*)  Class Members are not, for

22 example, giving a general release of claims, nor will any Class Member release FLSA claims unless

23 they are eligible to, and in fact do, affirmatively opt into the California FLSA Collective.  And, of

24 course, Class Members can opt out of the Settlement by submitting a Request for Exclusion (*Id.* §

25 III.K.7), in which event they will not release any claims or share in the recovery.  Lastly, Plaintiff's own

26 individual general release of claims is appropriate because he is a signatory to the Settlement

27 Agreement and is receiving enhanced special benefits including the $10,000 Class Representative

28 Service Award (if approved by the Court).  (*Id.* § III.C.5.)

1

### 6.    The Settlement Has No "Obvious Deficiencies."

2        Preliminary approval also is warranted because the Settlement has no "obvious deficiencies."

3    *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  As detailed above, the Settlement is

4    substantial, eminently reasonable given the litigation risks presented, and non-reversionary except as to

5    a small portion allocated to the FLSA settlement payments (which, as noted, the Court indicated was not

6    concerning at the June 27, 2019 preliminary approval hearing, *see* Tr. at 17:8-9).  The Settlement Share

7    for each Subclass Member asserting wage and hour claims will be based on his or her individual

8    workweek or paystub count, respectively, divided by the total number of workweeks or paystubs, as

9    applicable, for all such respective Subclass Members, which is a fair way to calculate what each such

10    Class Member should receive.  As noted, Settlement Shares for FCRA Subclass Members will be

11    allocated equally across such Subclass given that the background check forms and eligible penalties are

12    essentially the same for all.  Furthermore, Defendants do not oppose the Class Representative Service

13    Award ($10,000) or the Class Counsel Award (up to $460,000 in fees plus $15,000 in costs), and

14    regardless they are subject to Court approval at the Final Approval hearing. (Settlement, §§ III.K.15.i,

15    III.K.16.)  The parties agree that the LWDA will receive $30,000 (75%) as its share of the $40,000

16    PAGA Payment that is allocated to PAGA penalties, and that this amount is reasonable. (*Id.* § III.K.17.)

17    ### 7.    Class Counsel's Fees Requested Are Market-Consistent and Fair.

18        The Class Counsel fee award amount of up to $460,000 accurately reflects the parties' intent

19    that Class Counsel shall seek no more than this amount in fees.  This is less than 31% of the Total

20    Settlement Amount. (Setareh Decl., ¶ 11(b).)  The Class Counsel Award is fair and reasonable under all

21    the facts and circumstances, including the following:

22        (a)    A Reasonable Result Was Achieved on Behalf of the Class.

23        The benefit achieved on behalf of Class Members defines a primary yardstick against which any

24    fee motion is measured.  *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977); *accord Vizcaino v. Microsoft*

25    *Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  As detailed above, the parties reached an arm's-length

26    Settlement in good faith with a professional mediator skilled in resolving class and collective action

27    cases including wage and hour actions, after exchanging substantial relevant information.  (Setareh

28    Decl., ¶¶ 7-10.)  As also detailed above, the Settlement amounts are eminently reasonable given the

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

potential recovery and the risks faced by each of the parties with respect to liability and certification.

(b)    The Experience, Reputation, and Ability of Class Counsel.

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating a fee motion. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and efficiency of counsel" among fee motion criteria); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (considering "the quality of Class Counsel's effort, experience and skill"). Class Counsel has had substantial experience with the causes of action hereand has regularly litigated employment law class and collective actions.  (Setareh Decl., ¶¶ 22-26.)

(c)    The Effort Required by the Litigation Justifies the Fee.

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class and collective action for which final approval is sought.  *See Serrano*, 20 Cal. 3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50.  Compared to the reasonable value of the claims, Class Counsel expended substantial effort to achieve the Settlement result and litigate this matter.  (Setareh Decl., ¶¶ 27-31.)  The work done by the attorneys on this case includes communicating with Plaintiff, drafting pleadings, propounding multiple sets of interrogatories and comprehensive requests for production to Defendants, reviewing documents produced, working up and drafting a mediation brief, working with an expert to analyze the data produced by Defendants, drafting a motion for preliminary approval, and drafting supplemental papers in support of the motion for preliminary approval. (*Id.*)  The "time and labor" criterion weighs in favor of an award of the requested fees.

(d)    The Complexity of the Legal and Factual Issues.

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered.  *Serrano*, 30 Cal. 3d at 49, *accord Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001). Complexity of legal issues was moderate here, though the fee is reasonable, rendering this factor neutral.  (Setareh Decl., ¶¶ 36-42.)

(e)    Class Counsel Assumed Substantial Risk.

The novelty and challenges presented by a combined class and collective action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly

24

evaluated in connection with a fee motion. (Setareh Decl., ¶¶ 27-31.) *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery). Ninth Circuit and California state courts regard circumstances in which class counsel's work is wholly contingent – as is the case here – as a factor weighing in favor of approving a negotiated fee award that approximates market rates. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001).

### 8. The Settlement Will Comply with the Class Action Fairness Act of 2005.

Notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the appropriate federal and state officials is required in this action because this action is a class action and was removed from state court pursuant to the CAFA removal provisions. 28 U.S.C. §§ 1332(d) and 1453(b). Defendants will provide notice to the appropriate governmental officials. 28 U.S.C. § 1715(b). Pursuant to 28 U.S.C. § 1715(b), the Court may not issue an order granting final approval of the parties' Settlement earlier than 90 days after the later of the dates on which the appropriate federal official and the appropriate state officials are served with notice of the proposed Settlement. To take a conservative approach, the parties propose that the final approval hearing be scheduled no sooner than 90 days after the date of the Court's order granting preliminary approval to the Settlement.

### 9. Conditional Certification of a Settlement Class Complies with Rule 23.

Pursuant to Rule 23(c)(1), the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Rule 23(c)(1)). Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met. Conditional certification of the Settlement Class is appropriate.

#### a. The Numerosity Requirement is Met.

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union Loc. No. 30*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). No specified number of class members is needed to maintain class action. *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967); *see also McNeill v. New York City Housing Authority*, 719 F. Supp. 233 (S.D.N.Y. 1989);

1    *Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982); *Gordon v. Forsyth Cty. Hosp. Auth., Inc.*,

2    409 F. Supp. 708, 711 (M.D.N.C. 1975), *aff'd in part, vacated in part*, 544 F.2d 748; *Susquehanna Tp.*

3    *v. H and M, Inc.*, 98 F.R.D. 658 (M.D. Pa. 1983).  However, numerosity is generally presumed when the

4    proposed class would have at least 40 members.  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168

5    (S.D.N.Y. 2008).  Here, the approximately 20,000 FCRA Subclass members and 362 California

6    Subclass members satisfy numerosity.  (Setareh Decl., ¶ 37.)

7                                b.    The Commonality and Typicality Requirements are Met.

8            Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

9    Not all questions of law and fact need to be common.  *Hanlon v. Chrysler Corp.*, 150 F.3d at 1019.

10   Here, Plaintiff alleges that his claims involve common questions of both fact and law regarding

11   Defendants' alleged failure to abide by state wage-and-hour law—and Defendants will not object to

12   Plaintiff's position on this issue solely for the purposes of the Settlement.  Furthermore, "Rule 23(a)(3)

13   requires that the claims of the named parties be typical of the claims of the members of the class."  *Fry*,

14   198 F.R.D. at 468.  "Under the rule's permissive standards, representative claims are 'typical' if they are

15   reasonably coextensive with those of absent Class Members; they need not be substantially identical."

16   *Hanlon*, 150 F.3d at 1020.  Plaintiff contends, and for purposes of the Settlement only Defendants will

17   not object to Plaintiff's position, that Plaintiff's respective claims are essentially identical to all other

18   non-exempt and exempt, respectively, employees employed in California by Defendants, and their

19   claims are typical of such workers with the same common issues.  The same is true of the background

20   check claims of each FCRA Subclass member.

21                                c.    The Adequacy of Representation Requirement is Met.

22           To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show:

23   "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class

24   vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the

25   individual's claims and those asserted on behalf of the class."  *Fry*, 198 F.R.D. at 469.  For purposes of

26   the Settlement only, Defendants will not challenge Plaintiff's claim that the adequacy of representation

27   requirement is met here because Plaintiff claims he has the same interests as the remaining members of

28   the Settlement Class, there is no conflict between the named Plaintiff's claims and those of the other

Class Members, and Plaintiff is represented by experienced and competent counsel who have substantial experience in litigating wage-and-hour and background check class actions.  (Setareh Decl., ¶¶ 22-26, 42.)

               **d.**      <u>Certification is Proper Under Rule 23(b)(3).</u>

Settlement class certification also requires a showing that certification is proper under one of the three requirements of Rule 23(b).  Here, Defendants agree not to dispute for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) based on Plaintiff's claim in the settlement context that "questions of law or fact common to class members predominate over any questions affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

**10.**     <u>**Settlement Certification of the California FLSA Collective Is Proper.**</u>

The standard for certifying a collective action under the FLSA, which as noted requires court approval, is no more stringent than the standard for certifying a class under Rule 23. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016); *see supra* Section III.A (discussing FLSA settlement standards).  Certification of the California FLSA Collective for settlement purposes thus is appropriate for reasons discussed.  The Settlement also is part of "a reasonable compromise over issues…that are actually in dispute," including without limitation whether Defendants had a policy of requiring alleged "off-the-clock" overtime work and whether, in any event, Plaintiff could prove that they had the requisite knowledge of any such alleged work to create potential FLSA liability. *See Lynn's Food Stores,* 679 F. 2d at 1354; *McKeen-Chaplin*, 2012 WL 6629608, at *2; *supra* Section III.B.4.b.(i).

**11.**     <u>**The Notice Packet Is Fair and Adequate.**</u>

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.  A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Here, the Class Notices (Exhibits 1 and 2 to the Settlement) and the manner of notice are "the best notice practicable,"

27

1  as required under Rule 23(c)(2)(B).  Class Members can be identified, the Class Notice Packet

2  (including the Class Notice and, as applicable, the FLSA Collective Opt-In Form) will be mailed

3  directly to each Class Member using First-Class U.S. Mail, and there are provisions for re-mailing

4  where necessary. (Settlement, § III.K.4.)  The Class Notice and relevant documents pertinent to

5  Plaintiff's Motion for Preliminary Approval shall also be made available online at a website to be

6  established by the Settlement Administrator not less than 5 weeks prior to the final approval hearing.

7  (*Id.* § III.L.2.)  The Class Notice adequately informs Class Members of the nature of the litigation, the

8  essential terms of the Settlement, his or her estimated Settlement Share and other payments (if any), how

9  to opt into the California FLSA Collective (as applicable), and how to object to or elect not to participate

10  in the Settlement (including by email), or correct the information on which his or her settlement

11  payment(s) are calculated. (*Id.*, § III.K.2 & Exh. 1-2.)  Further, the Class Notice identifies Class

12  Counsel, specifies the amounts of the Class Representative Service Award and Class Counsel Award

13  sought, and explains how to obtain additional information regarding the Action and the Settlement. (*Id.*)

14  The procedures in the Settlement thus provide the best possible notice to the Class Members.

15  **12.    Phoenix Settlement Administrators Should Be the Administrator.**

16  Plaintiff proposes that the Court appoint Phoenix Settlement Administrators to serve as

17  Settlement Administrator.  Phoenix is experienced in administering wage-and-hour class action

18  settlements and is regularly appointed as a claims administrator by California courts to administer

19  settlements.  (Setareh Decl., ¶¶ 33-35.)  Over the last two years, Class Counsel have engaged with

20  Phoenix approximately 20 times in 20 class actions.  (*Id.,* ¶ 35.)  Class Counsel solicited bids from

21  several experienced third party settlement administrators:  Phoenix, Simpluris, and CPT. (*Id.* ¶ 33.)

22  Ultimately, Phoenix was selected because they submitted a reasonable bid that they were willing to cap

23  at $65,000, which Class Counsel believes is reasonable in light of Class Counsel's experience in such

24  settlement administration matters, and given the work to be done by or potentially required of the

25  Settlement Administrator due to the various Settlement provisions (*e.g.*, reminder, skip-tracing and re-

26  mailing provisions) and subclass sizes. (*Id.*; Settlement, § III.K.18.)  The parties agree that this amount

27  is reasonable and adequate to provide the necessary notice of the Settlement to the estimated 20,000

28  Class Members (including the approximately 362 California Subclass Members for the wage-and-hour

1  portion of the Settlement).  Class Counsel will provide an updated settlement administration expense

2  estimate at the time the parties file the motion for final approval of the Settlement.

3          **13.    Residual.**

4          The entire $1.5 Million Total Settlement Amount will be paid out with *no* reversion to

5  Defendants except, as noted, any residual portion of the $50,000 California FLSA Collective Settlement

6  Amount that is not claimed or cashed, which the Court stated was not concerning at the June 27, 2019

7  preliminary approval hearing.  (Tr. at 17:6-16; Settlement § III.K.15.h.)  Any remaining excess

8  amounts will be reallocated to the Class (*e.g.*, if the Class Counsel fee award is not entirely approved)

9  or, in the event of unclaimed funds after a remailing effort, reverted to the California Department of

10  Industrial Relations Unpaid Wage Fund. (Setareh Decl., ¶ 12, Exh. 1, § III.K.15.g, h.).

11          **14.    Proposed Schedule.**

12          Plaintiff proposes the following schedule for approval of the Settlement, which assumes that

13  preliminary approval of the Settlement is granted on April 2, 2020:

| Date | Event |
|---|---|
| 04/23/20 | Defendants to provide to Settlement Administrator database with Class Member data to calculate Settlement Shares (21 days after Preliminary Approval) |
| 05/14/20 | Settlement Administrator to mail Class Notice Packets to all Class Members (21 days after receiving Class Member information from Defendants) |
| 06/29/20 | Date by which Plaintiff and Class Counsel will submit their motion for Class Representative Service and Class Counsel Awards (45 days after Notices mailed) |
| 06/29/20 | Last day for eligible Class Members to submit to the Settlement Administrator opt-in consent forms to join the California FLSA Collective (45 days after Class Notices mailed), subject to extension provisions of Settlement Agreement |
| | Last day for Class Members to submit to the Settlement Administrator Elections Not to Participate in Settlement (45 days after Class Notices mailed), subject to extension provisions of Settlement Agreement |
| 07/13/20 | Date by which Settlement Administrator will provide a list of Class Members who submitted timely Request for Exclusion Forms (14 days after deadline for Elections Not to Participate), subject to extension provisions of Settlement Agreement |
| 08/06/20 | Date by which Plaintiff will submit his motion for final approval of Settlement |
| 08/20/20 | Last day for Class Members to submit to the Settlement Administrator objections to Settlement (3 weeks before hearing on Plaintiff's Final Settlement Approval Motion) |
| 09/03/20 | Date by which Plaintiff will file with the Court a summary of objections received and Plaintiff's responses thereto (2 weeks after objection deadline) |
| 09/10/20 | Hearing on Plaintiff's motion for final approval of Settlement (not less than 90 days after order preliminarily approving Settlement) |

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

II.    **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully request that the Court grant his motion in its entirety and enter an order:  (1) conditionally certifying the Settlement Class and the California FLSA Collective; (2) granting preliminary approval of the Settlement; (3) appointing Plaintiff as the Class Representative; (4) appointing Setareh Law Group as Class Counsel; (5) approving and directing the mailing of the Class Notices and related materials; (6) appointing Phoenix as the Settlement Administrator; and (7) scheduling the final approval hearing for September 10, 2020, or as soon thereafter as is available and convenient for the Court.

DATED:  December 6, 2019                    SETAREH LAW GROUP


                                            /s/ Shaun Setareh
                                            SHAUN SETAREH
                                            WILLIAM M. PAO
                                            ALEXANDRA R. MCINTOSH
                                            Attorneys for Plaintiff
                                            ANDREW QUIRUZ

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th, day of December 2019, a true and correct copy of the foregoing documents was filed via the court's CM/ECF filing system and a copy was delivered via the same on all attorneys of record.

*/s/ Shaun Setareh*