1  Shaun Setareh (SBN 204514)
     shaun@setarehlaw.com
2  William M. Pao (SBN 219846)
     william@setarehlaw.com
3  SETAREH LAW GROUP
   315 South Beverly Drive, Suite 315
4  Beverly Hills, California 90212
   Telephone (310) 888-7771
5  Facsimile (310) 888-0109

6  Attorneys for Plaintiff
   ANDREW QUIRUZ

7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

13  ANDREW QUIRUZ, on behalf of himself, all        Case No. 5:17-cv-03300-BLF
    others similarly situated,
14                                                   Assigned For All Purposes To The Honorable
                 Plaintiff,                          Beth Labson Freeman, Courtroom 3
15
          vs.                                        **PLAINTIFF'S NOTICE OF MOTION AND**
16                                                   **MOTION FOR FINAL APPROVAL OF**
    SPECIALTY COMMODITIES, INC., a North             **CLASS AND COLLECTIVE ACTION**
17  Dakota corporation; ARCHER DANIELS               **SETTLEMENT AND CERTIFICATION OF**
    MIDLAND COMPANY, a business entity form          **SETTLEMENT CLASS; MEMORANDUM**
18  unknown; and DOES 1 through 100, inclusive,      **OF POINTS AND AUTHORITIES;**
                                                     **DECLARATION OF SHAUN SETAREH;**
19               Defendants.                          **[PROPOSED] ORDER**

20                                                   [Filed Concurrently with the Declaration of
                                                     Shaun Setareh and [Proposed] Order]
21
                                                     Date:      September 10, 2020
22                                                   Time:      1:30 p.m.
                                                     Place:     Courtroom 3
23
                                                     Action Filed:       May 3, 2017
24                                                   Date of Removal:    June 7, 2017

25

26

27

28

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1   TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on September 10, 2020 at 1:30 p.m., or as soon thereafter as the

3   matter may be heard in Courtroom 3 of the United States District Court for the Northern District of

4   California, located at 280 South First Street, San Jose, California 95113, before the Honorable Beth

5   Labson Freeman, Plaintiff ANDREW QUIRUZ ("Plaintiff") will and does hereby move this Court for

6   entry of an order and judgment granting final approval of the class action settlement and all agreed upon

7   terms in the Amended Stipulation of Settlement of Class and Collective Action Claims and Release of

8   Claims as well as an award of fees to Class Counsel and an enhancement payment to Plaintiff.

9          This Motion is based on grounds that the Settlement, which was reached after arm's-length

10  negotiations by counsel for Plaintiff and the Class, and counsel for Defendants, is fair and reasonable,

11  has drawn an overwhelmingly favorable response from the Class, and should be given final approval by

12  the Court for all the reasons set forth in the memorandum in support of the motion.

13         This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum

14  of Points and Authorities; the declarations of Shaun Setareh and Andrew Quiruz, all accompanying

15  exhibits, as well as all other pleadings and papers on file with this Court and such further evidence and

16  arguments as may be presented at the hearing on the Motion.

17

18  DATED:  August 6, 2020                    SETAREH LAW GROUP

19

20                                           _/s/ Shaun Setareh_____
                                             SHAUN SETAREH
21                                           Attorneys for Plaintiff
                                             ANDREW QUIRUZ

22

23

24

25

26

27

28

## MEMORANDUM IN SUPPORT OF JOINT MOTION

## I.   INTRODUCTION

The Parties' settlement of this wage-and-hour class action (the "Settlement") meets the criteria for final approval.  The Settlement fairly resolves Plaintiff's claims that Defendants violated California wage-and-hour laws by failing to pay them (and the settlement class) for all hours worked and at the correct rate of pay; provide them with compliant meal periods and rest breaks; provide them with compliant wage statements; and pay their final wages on time.  Plaintiff also alleged that Defendants violated statutes subjecting them to liability under the California Unfair Competition Law ("UCL"); violated the California Labor Code Private Attorneys General Act of 2004, as amended ("PAGA") (Lab. Code §§ 2698 *et seq.*); and violated state and federal consumer background check laws, including the FCRA (15 U.S.C. §§ 1681 *et seq.*) and analogous California laws.  The Settlement is the product of arm's-length negotiations by experienced counsel after significant discovery, and recognition of the strengths and weaknesses of each side's positions.  The Settlement has received the overwhelming support of the Class.

The Settlement, in the amount of $1,500,000.00, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Specifically:

- Class Counsel (who are highly experienced handling complex wage-and-hour class and collective actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement. (Declaration of Shaun Setareh ("Setareh Decl."), ¶ 4-31.)

- The Settlement is consistent with the strengths and weaknesses of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation.  *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorably to the Settlement.  (Declaration of Kevin Lee ("Lee Decl."), ¶ 12-24.)  The Settlement Administrator only received 23 complete and timely opt-out requests out of the 25,005 Class Members who received notice of the Settlement (Lee Decl., ¶ 16, 20  and 23), resulting in an opt-out rate of approximately

1    0.09%.

2        Class Counsel seeks a fair and reasonable percentage of the common fund and has agreed to

3    request no more than $460,000 in fees from the gross settlement amount or 31% of the total settlement

4    amount and no more than $15,000 in costs (even though actual costs incurred as of the filing of this

5    motion – $16,275.50 – already exceeds that amount) pursuant to the terms of the Settlement.  The

6    lodestar figure is in line with the requested fee, requiring a multiplier of just 1.95.

7        Thus, the Parties respectfully submit that final approval of the Settlement should be granted and

8    judgment entered accordingly.

9    **II.    BACKGROUND**

10       At all times relevant to this action, ADM is and has been one of the world's largest agricultural

11   processors and food ingredient providers, with approximately 31,000 employees serving customers in

12   more than 170 countries.  ADM has approximately 500 crop procurement locations, 270 ingredient

13   manufacturing facilities, 44 innovation centers, and a large crop transportation network.[1]  SCI is a

14   specialty food importer, processor and distributor and source seeds, ancient grains, dried fruits and

15   other ingredients.  SCI is owned and operated by ADM under a specialty division.

16       Plaintiff, a former warehouse worker employed by SCI, pursues this wage-and-hour class and

17   FLSA collective action and background check class action on behalf of all non-exempt employees

18   working for Defendants in California during the applicable limitations period (described below).  The

19   allegations primarily concern the provision of meal periods and rest breaks for employees working at

20   its warehouses, but also include claims for allegedly unpaid minimum wages and overtime.  Among

21   other things, Plaintiff alleges that, due to operational needs, he was not provided with compliant meal

22   periods and rest breaks.  Plaintiff also complains that he was not provided with compliant wage

23   statements (both direct and derivative) and was not paid his final wages on time (derivative).

24       Additionally, Plaintiff alleges that exempt employees working for Defendants in California

25   during the applicable limitations period (described below) were not provided with compliant wage

26

27   _____

28       [1] https://www.adm.com/our-company

2

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1  statements (both direct and derivative) and were not paid final wages on time (derivative), in violation

2  of applicable California wage statement and wage payment laws.

3      Moreover, Plaintiff alleges that Defendants obtained background checks as to employees and

4  applicants nationwide (regardless of whether non-exempt or exempt) during the applicable limitations

5  period (described below) through the use of a non-compliant disclosure form that was not "clear and

6  conspicuous" and did not consist "solely of the disclosure" (15 U.S.C. § 1681b(b)(2)(A)(i)), in

7  violation of the FCRA and, as applicable, analogous California background check laws.

8      Defendants vehemently deny Plaintiff's allegations.  Among other things, Defendants contend

9  that Plaintiff and the Class Members were provided with compliant meal periods and rest breaks; that

10  they were paid all legally required minimum wages and overtime; that they were provided with

11  compliant wage statements; that they were paid their final pay on time; and that they at all relevant

12  times used legally compliant background checks, including under the FCRA.  Defendants further deny

13  that, for any purpose other than settling the action, Plaintiff's claims are appropriate for class or

14  collective action treatment.

15      In the course of litigation, the parties produced documents to each other, including Defendants'

16  timekeeping and payroll data, and relevant written policies including employee manuals.  Pursuant to

17  the order of the Court (ECF 23), the parties participated in a mediation with Michael E. Dickstein, a

18  nationally recognized mediator, on April 12, 2018. (Setareh Decl., ¶ 39.)  At the conclusion of a full

19  day of mediation, at which the parties engaged in good-faith, arms' length bargaining, exchanged

20  detailed mediation briefs, and realistically assessed the strengths and weaknesses of their positions,

21  they were able to reach a settlement. (*Id.*)

22  **III.  <u>THE SETTLEMENT</u>**

23      The following is a summary of the material elements of the Settlement.

24      **A.    THE SETTLEMENT CLASS**

25      The Class and the California FLSA Collective to be conditionally certified, and related Class

26  Periods, are defined as:

27  **California Non-Exempt Employee Subclass**

28  Any person who was employed by Defendants in an hourly- paid or salaried non-exempt
position in California at any time from May 3, 2013 to the date that the District Court grants

preliminary approval of the Settlement. (Settlement, §§ I.C. and I.O.)

**California Exempt Employee Subclass**
Any person who was employed by Defendants in a salaried exempt position in California at any time from May 3, 2016 to the date that the District Court grants preliminary approval of the Settlement. (Settlement, §§ I.D. and I.O)

**FCRA Subclass**
Any person who (1) was employed by Defendants, or (2) applied for employment with Defendants, at any time from May 3, 2012 to the date that the District Court grants preliminary approval of the Settlement. (Settlement, §§ I.V. and I.O.)

**California FLSA Collective**

Each California Non-Exempt Employee Subclass Member who timely and properly opts into the FLSA claims in the case using an FLSA Opt-In Consent Form pursuant to the terms set forth in the Settlement Agreement, thereby becoming a California FLSA Collective Member.[2] (Settlement, §§ I.E., I.F., III.K.9).

### B.    NOTICE PROCESS

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement. (ECF 92.)  The Parties implemented the Court's directions in this regard.

After obtaining quotes from no less than three settlement administrators (ECF 70, ¶ 33), the Parties selected, and the Court approved, Phoenix Settlement Administrators ("Phoenix"), to administer the Settlement.  Kevin Lee with Phoenix was designated as Case Manager for the administration of the Settlement. (Lee Decl., ¶ 1.)

On or about April 24, 2020, counsel for Defendants provided Phoenix with data file that contained names, last known mailing addresses, Social Security Numbers, total weeks worked, and total pay periods worked for each Class Member during the Class Period. (Lee Decl., ¶ 3.)

On May 19, 2020, the mailing addresses contained in the Class Members' data were processed and updated by Phoenix using the NOCA. (Lee Decl., ¶ 4.)  In the event that any individual had filed a U.S. Postal Service change of address request, Phoenix used the address listed with the NCOA when mailing Class Notices. (*Id.*)

---

[2] Because only California Non-Exempt Employee Subclass Members may opt into the California FLSA Collective, the Class Period applicable to the California Non-Exempt Employee Subclass also by definition determines the maximum eligible population of the California FLSA Collective.

On May 19, 2020, Phoenix mailed Class Notices to all Class Members via first-class mail.  (Lee Decl., ¶ 5.)

On June 3, 2020, Phoenix mailed a reminder postcard to all Class Members who had not responded. (Lee Decl., ¶ 6.)

On June 3, 2020, pursuant to the Class Action Fairness Act (CAFA), Phoenix mailed (on behalf of Defendants), return-receipt requested, the Attorney Generals of all fifty (50) states, six (6) United States territories, and the United States Attorney General a CAFA Notice that included without limitation all applicable court documents regarding the *Quiruz v. Specialty Commodities, Inc., et al.* Class Action Settlement. (Lee Decl., ¶ 7.)

On June 10, 2020, Phoenix also e-mailed, delivery receipt requested, the CAFA Notice to the Attorney Generals of twenty-five (25) states and territories (all those for whom Phoenix could identify an email address for CAFA Notices online). Because many state and federal offices were closed due to COVID-19, this additional method of Noticing was taken as a precaution to ensure that all entities received timely Notice of this settlement. (Lee Decl., ¶ 8.)

Of the 25,789 Class Notices mailed, 2,138 were returned on or before August 6, 2020, as undeliverable. (Lee Decl., ¶ 9.)  Only two (2) were returned with a forwarding address. (*Id.*)  Phoenix performed address traces for each of these 2,136 Class Members using TransUnion TLOxp, one of the most comprehensive address databases available for skip tracing. (*Id.*)  Of the 2,136 traces performed, Phoenix located updated addresses for 1,352 Class Members and promptly re-mailed Class Notices to those Class Members via first-class mail. (*Id.*)  During the response period, nine (9) Class Members contacted Phoenix to request another Notice packet.  Phoenix promptly updated their addresses and re-mailed to those Class Members via first-class mail. (Lee Decl., ¶ 10.)  Phoenix did not locate updated addresses for the other 784 Class Members. (Lee Decl., ¶ 11.)  Thus, 784 Class Notices (approximately 3.04% of the total) were undeliverable. (*Id.*)

### 1.    California FLSA Collective & Non-Exempt California Class

Of the 625 California FLSA Collective Opt-In Claim Forms that were distributed with the Class Notice to the California FLSA Collective Members, Phoenix has received on or before August 6, 2020, 126 Claim Forms. (Lee Decl., ¶ 12.)  The total number of Claimed work weeks is approximately 19,197,

or approximately 21.89% of the 87,677 total weeks worked by the Class. (*Id.*)  The total of individual settlement shares for the 126 California FLSA Collective Members who submitted Claim Forms is $10,947.57 of the total $50,000.00 allocation. (*Id.*)  Of the 126 Claim Forms, 1 is considered late.  The parties agreed to accept the late Claim. (*Id.*)

Based upon the calculations stipulated in the Settlement for California FLSA Collective Claimants, and taking into account the $10,947.57 claimed amount of the total $50,000 allocation,  the highest individual settlement payment is approximately $206.44, the lowest individual settlement payment is approximately $1.71, with the average individual settlement payment at approximately $86.46. (Lee Decl., ¶ 13.)

Based upon the calculations stipulated in the Settlement for Non-Exempt California Class Members, and taking into account $510,000 that was allocated, the highest individual settlement payment is approximately $2,105.68, the lowest individual settlement payment is approximately $5.82, with the average individual settlement payment at approximately $816.00. (Lee Decl., ¶ 14.)

None of the Non-Exempt California Class Members (including any California FLSA Collective Member) disputed their estimated individual settlement shares as described by the Class Notice. (Lee Decl., ¶ 15.)

Phoenix has received zero (0) Requests for Exclusion from any potential member of the Non-Exempt California and FLSA Classes. The deadline for Class Members to have submitted a "Request for Exclusion" to the Settlement was July 3, 2020. (Lee Decl., ¶ 16.)

As of the date of this declaration, Phoenix has received zero (0) Objections to the Settlement from any member of the Non-Exempt California and FLSA Classes.  The deadline for Class Members to submit an "Objection" to the Settlement August 20, 2020. Phoenix will provide a supplemental declaration shortly after the August 20, 2020 deadline attesting to any responses received. (Lee Decl., ¶ 17.)

## 2.     Salaried Exempt California Class

One hundred five (105) individuals were identified as salaried, exempt employees. Based upon the calculations stipulated in the Settlement for the Salaried Exempt California Class, the highest individual settlement payment is approximately $784.61, the lowest individual settlement payment is

approximately $24.78, with the average individual settlement payment at approximately $476.19. (Lee Decl., ¶ 18.)

None of the Salaried Exempt California Class Members disputed their estimated individual settlement shares as described by the Class Notice. (Lee Decl., ¶ 19.)

Phoenix has received <u>one (1) Request for Exclusion</u> from a member of the Salaried Exempt California Class. The deadline for Class Members to have submitted a "Request for Exclusion" to the Settlement was July 3, 2020. (Lee Decl., ¶ 20.)

Phoenix has received <u>zero (0) Objections</u> to the Settlement from any potential member of the Salaried Exempt California Class.  The deadline for Class Members to submit an "Objection" to the Settlement is August 20, 2020.  Phoenix will provide a supplemental declaration shortly after the August 20, 2020 deadline attesting to any responses received. (Lee Decl., ¶ 21.)

### 3. <u>Fair Credit Reporting Act (FCRA) Class</u>

Phoenix determined there were twenty-five thousand fifty-nine (25,059) eligible employees to comprise the FCRA Class. Pursuant to the Stipulation of Settlement, everyone in this subclass should receive an equal share of the allocated $300,000.00. As such, all twenty-five thousand thirty-eight (25,038) individuals who did not request exclusion will receive $11.98. (Lee Decl., ¶ 22.)

Phoenix has received <u>twenty-one (21) Requests for Exclusion</u> from members of the FCRA Class. The deadline for Class Members to have submitted a "Request for Exclusion" to the Settlement was July 3, 2020. (Lee Decl., ¶ 23.)

Phoenix has received <u>three (3) Objections</u> to the Settlement from members of the FCRA Class. The deadline for Class Members to submit an "Objection" to the Settlement is August 20, 2020. (Lee Decl., ¶ 24.)

### C. TOTAL SETTLEMENT AMOUNT AND DISTRIBUTIONS

The Settlement creates a Total Settlement Amount ("TSA") of $1,500,000.00.  (ECF 70-1, § I.CC.)  The TSA covers (1) class representative payments of $10,000 to plaintiff in compensation for having prosecuted the action and undertaken the risk of payment of costs in the event this matter had not been successfully concluded; (2) Settlement Shares paid to Class Members; (3) the employer's share of taxes attributable to the Class Members' Settlement Shares; (4) the payment of $30,000 to the California

Labor and Workforce Development Agency (the "LWDA") as its share (75%) of the $40,000 allocated to civil penalties under PAGA; (5) the Class Counsel Fees of up to $460,000 (representing 31% of the TSA), plus costs not to exceed $15,000, to compensate plaintiffs' counsel for all work performed thus far and all work remaining to be performed in documenting and administrating the Settlement and securing Court approval; (6) the fees and expenses of the Settlement Administrator, not to exceed $65,000; and (7) any other fees or expenses (other than the Class Counsel Fees and Costs Payment) incurred in implementing the terms and conditions of the settlement agreement and securing the judgment pursuant to that agreement.  After all court-approved deductions from the TSA, the Net Settlement Amount of $920,000.00 is available to pay the Class Members' Settlement Shares before taxes.

Except as to the payments from the California FLSA Collective Settlement Amount, no Class Member needs to submit a claim. (*Id.*, § III.K.15.)  Checks for payments from the Aggregate Class Payment Amount to the California Non-Exempt and Exempt Employee Subclasses and the FCRA Subclass, including California Subclass shares of the PAGA Payment, will be paid in a single check to the applicable Class Members who do not opt out of the Settlement. (*Id.*, § III.K.15.g.)

The Settlement Administrator will pay by separate check the California FLSA Collective Settlement Amount payment to each California Non-Exempt Employee Subclass Member who timely and properly opts-in to the California FLSA Collective. (*Id.*, §§ I.E-F, FF, III.K.9, III.K.15.c, g.)  Any California Non-Exempt Employee Subclass Member who does not do so shall not become a California FLSA Collective Member, release any FLSA claims, or receive a share of the California FLSA Collective Settlement Amount. (*Id.*, §§ I.F, W, QQ, III.C.2, III.K.9, III.K.15.c, g.) The Settlement Administrator shall send such settlement checks by regular First Class U.S. Mail to Class Members' last known mailing address no later than 25 days after the Effective Date of the Settlement (after, e.g., all appeal periods have run or appeals resolved), and shall advise the recipient that the check(s) will remain valid and negotiable only for 90 days from the date of issuance. (*Id.*, § III.K.15.g.) The Settlement Administrator will mail a reminder of the 90-day check cashing period to any Class Members whose check(s) remain uncashed after 45 days. (*Id.*, § III.K.15.g-h.) Any settlement check shall be void if not cashed within 90 days after issuance except as provided below. (*Id.*) If a settlement check is returned as

undeliverable within 60 days after issuance, such check(s) will be sent via regular First-Class U.S. Mail to the forwarding address noted. (*Id*., § III.K.15.h.) If no forwarding address is provided, the Settlement Administrator will perform a skip-trace or other appropriate search, and will perform a single re-mailing if possible. (*Id*., § III.K.15.h.) Any Class Member who does not timely cash his or her settlement check(s) shall still be bound by the Settlement's terms, including those pertaining to the Released Claims and any final Judgment. (*Id*., § III.K.15.h.iv.)

The amount represented by any settlement checks that remain uncashed beyond the deadline (including any undeliverable checks for which a valid mailing address could not be located) will be transmitted to the California Division of Labor Standards Enforcement's Unclaimed Wage Fund (*see* Cal. Lab. Code § 96.6) within 60 days, except that any unclaimed or uncashed increment of the $50,000 California FLSA Collective Settlement Amount (and no other amount) will revert to Defendants within 60 days. (*Id.*, § III.K.15.h.iii.)

**D.    SCOPE OF THE CLASS MEMBER RELEASES**

As of the Effective Date, in exchange for the consideration set forth in this Agreement, the Settlement Class Members, and the California FLSA Collective Members, respectively, fully and finally release the Released Parties from the Released Claims and, as applicable, the FLSA Released Claims, as follows:

1.    **Releases by California Non-Exempt Employee Subclass.**  California Non-Exempt Employee Subclass members fully and finally release the Released Parties from any and all claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising on or before the Preliminary Approval Date (the "Release Period"), arising out of, based on, or encompassed by: (a) any and all claims for unpaid wages (including claims for regular wages, overtime, final wages, and meal period and rest period premiums), interest, penalties (including waiting time penalties pursuant to Labor Code section 203 and wage statement penalties pursuant to Labor Code section 226), any and all claims pursuant to Labor Code sections 201-204, 226, 226.7, 510, 512, 558, 1194, and the Industrial Welfare Commission Wage Orders; (b) any and all claims under Business and Professions Code section 17200, *et seq.*, based on or reasonably relating to (1) claims or facts asserted or alleged in the Action, or (2) the violation of any statute, regulation, wage order, or

decisional construction of a law alleged to have been violated in the Action; (c) any and all claims under PAGA; and (d) claims for attorneys' fees and costs and any other remedies available at law or in equity allegedly owed or available to the California Non-Exempt Employee Subclass arising or reasonably flowing from any complaints (or amended complaints) filed in the Action (together, "California Non-Exempt Employee Released Claims"). (*Id.*, § III.C.1.)

2.   **FLSA Releases by California FLSA Collective.**  California Non-Exempt Employee Subclass Members who timely and properly opt into the California FLSA Collective using an FLSA Opt-In Consent Form pursuant to the terms set forth in Section III.K.9, thereby becoming California FLSA Collective Members, fully and finally release the Released Parties from any and all claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising at any time during the Release Period, arising out of, based on, or encompassed by: (a) any and all claims under the FLSA that were or could have been alleged in this Action based on the facts alleged in any complaints (or amended complaints) filed in the Action (including claims for regular wages, minimum wages, overtime, interest and penalties including claims for liquidated damages); and (b) claims for attorneys' fees and costs and any other remedies available at law or in equity allegedly owed or available to the California FLSA Collective arising or reasonably flowing from any complaints (or amended complaints) filed in the Action (together, the "Released FLSA Claims").  No other Class Members (including any California Non-Exempt Employee Subclass Members who do not timely and properly opt into the California FLSA Collective) shall release or be deemed to have released any Released FLSA Claims hereunder. (*Id.*, § III.C.2.)

3.   **Releases by California Exempt Employee Subclass.**  California Exempt Employee Subclass members fully and finally release the Released Parties from any and all claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising at any time during the Release Period, arising out of, based on, or encompassed by: (a) any allegation that Defendants maintained inaccurate wage statements under Labor Code Section 226; (b) any and all claims under PAGA; and (c) claims for attorneys' fees and costs and any other remedies available at law or in equity allegedly owed or available to the California Exempt Employee

1  Subclass arising or reasonably flowing from any complaints (or amended complaints) filed in the Action

2  (together, "California Exempt Employee Released Claims"). (*Id.*, § III.C.3.)

3          4.     **Releases by FCRA Subclass.**  FCRA Subclass members fully and finally

4  release the Released Parties from any and all claims, rights, demands, liabilities and causes of action of

5  every nature and description, whether known or unknown, arising at any time during the Release Period,

6  arising out of, based on, or encompassed by: (a) claims under the Fair Credit Reporting Act, and any

7  other statutes relating to background checks, consumer credit reports, or applications for employment;

8  (b) claims under applicable state and local laws relating to background checks, consumer credit reports,

9  or applications for employment; and (c) claims for attorneys' fees and costs and any other remedies

10  available at law or in equity allegedly owed or available to the FCRA Subclass members arising or

11  reasonably flowing from any complaints (or amended complaints) filed in the Action (together, "FCRA

12  Subclass Released Claims"). (*Id.*, § III.C.4.)

13  **IV.**    **THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL**

14      **A.**    **THE BEST PRACTICAL NOTICE OF SETTLEMENT HAS BEEN PROVIDED**

15          **TO THE CLASS**

16         The mailing of the Class Notice to Class Members, and the general administration of the notice

17  process as described above, meets the requirements for the "best practicable" notice in this case as is

18  necessary to protect the due process rights of Class Members.  *Phillips Petroleum Co. v. Shutts*, 472

19  U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of litigation and

20  explanation of opt-out rights satisfies due process).  Indeed, individual Class Notice was served on each

21  Class Member at his or her most recent address, after cross-referencing each address with U.S. Post

22  Office records; Class Members also were directed to a dedicated website that included the Notice of

23  Proposed Class Action Settlement and Final Approval Hearing and other Settlement-related

24  information.  Moreover, both the Class Notice and Notice of Proposed Class Action Settlement and

25  Final Approval Hearing informed Class Members of the pendency of the action and their right not to

26  participate in the Settlement.  *See Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314

27  (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to

28  apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

This lack of governmental objection to the Settlement further supports final approval.

## B.    THE CAFA NOTICE REQUIREMENTS HAVE BEEN SATISFIED

Although there is no governmental participant in this case, pursuant to 28 U.S.C. section 1715 (the Class Action Fairness Act ("CAFA")), on June 3, 2020, Phoenix provided notice of the Settlement to the Office of the Attorney Generals of all fifty (50) states, six (6) United States territories, and the United States Attorney General a CAFA Notice that included without limitation all applicable court documents regarding the *Quiruz v. Specialty Commodities, Inc., et al.* Class Action Settlement. (Lee Decl., ¶ 7.)

On June 10, 2020, Phoenix also emailed the CAFA Notice to the Attorney Generals of twenty-five (25) states and territories (all those for whom PSA could identify an email address for CAFA Notices online). Because many state and federal offices were closed due to COVID-19, this additional method of Noticing was taken as a precaution to ensure that all entities received timely Notice of this settlement. (Lee Decl., ¶ 8.)

"[A]lthough CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010). To date, no federal or state official has raised such concerns.

## C.    FINAL APPROVAL STANDARDS UNDER RULE 23

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class

12

action litigation is concerned").  On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'"  *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.  The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel [...] and the reaction of the class members to the proposed settlement." *Id.*; *see also Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

**D.     THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE OF THE POSITIVE RESPONSE TO THE SETTLEMENT BY CLASS MEMBERS, THE SIGNIFICANT INVESTIGATION CONDUCTED, CLASS COUNSEL'S EXPERIENCE, AND ARM'S-LENGTH NEGOTIATIONS**

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that out of 25,005 Class Members that received Class Notice, only 3 objected to the Settlement (and even then, they were as to the much larger FCRA Class); (2) the meaningful discovery conducted; (3) Class Counsel's experience in this kind of litigation; and (4) the

arm's-length negotiations that took place before an experienced mediator.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair.").  These factors are well satisfied here.

### 1.   Class Members' Response to the Settlement Is Positive

Out of 25,005 Class Members, only three (3) Class Member objected to the Settlement (and even then, only with respect to the much larger FCRA Class) (Declaration of Kevin Lee ("Lee Decl."), ¶¶ 17, 21 and 24.) *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action[s] are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837-38 (9th Cir. 1976).

Moreover, only 23 Class Members—0.09% of the total Class—opted out of the Settlement. (Lee Decl., ¶¶ 16, 20 and 23.)  This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-out rate of 16 of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-outs are low, there is presumption of favorable class reaction).

### 2.   The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues

The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery) (citation omitted). Before any mediation, Class Counsel reviewed hundreds of pages of documents, as well as payroll and

1    timekeeping data, produced by Defendants.  (Setareh Decl., ¶¶ 34-37.)  The Parties also spent significant

2    time preparing for, and taking part, in mediation.

3              **3.       Counsel's Endorsement of the Settlement Is Entitled to Great Weight**

4              The judgment of experienced counsel regarding the settlement is entitled to great weight.

5    *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18.  Reliance on such

6    recommendations is premised on the fact that "parties represented by competent counsel are better

7    positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

8    litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pac.*

9    *Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

10             Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable.

11   Plaintiff's Counsel and Defendants' Counsel each have extensive experience in prosecuting and

12   litigating class action wage-and-hour suits like this one.  (Setareh Decl., ¶¶ 4-31.)  The fact that qualified

13   and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors

14   this Court's approval of the Settlement.

15             **4.       The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-**

16                        **Length Negotiations**

17             As set forth above, a settlement is presumed fair if it was negotiated at arm's length by

18   experienced, competent counsel equipped with enough information to act intelligently.  *See Tijero v.*

19   *Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties

20   participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft*

21   *Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A

22   presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations

23   between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex*

24   *Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

25             The Parties engaged in a full-day mediation.  (Setareh Decl., ¶ 39.)  Before the mediation, the

26   Parties submitted mediation briefing, including detailed data analyses and assessments, and substantial

27   evidence.  (*Id.*, ¶¶ 34-37.)

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

5.      **The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation**

a.      *The Value of the Settlement Favors Final Approval*

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...]  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]"  *Officers for Justice*, 688 F.2d at 624 (citations omitted).  Accordingly, the "settlement is not to be judged against a […] speculative measure of what *might* have been achieved."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—$1,500,000—is a fair and reasonable result, especially in light of the defenses raised by Defendants, including its defenses that straight time was paid and that overtime was paid or not due and owing across the putative class.  Defendants also argue that they did not have a purported policy of *not* paying required compensation, but rather a policy of paying compensation and of requiring employees to report any unpaid compensable time, and that any failure to report by employees cannot be legally charged to Defendants.  Defendants also strongly dispute liability and assert that employees could have taken their meal periods and rest breaks at any time, and that they did not require employees to work through them.  If true, this would defeat liability, and the individualized inquires that may be necessary to determine liability would complicate certification. With respect to the claim for waiting time and wage statement penalties pursuant to Labor Code sections 203 and 226, Defendants contend that they would present several good faith defenses that would preclude a finding of willfulness.  As previously noted, Class Counsel believed in good faith that

16

Defendants' disclosure forms contained extra language violating the FCRA's standalone disclosure requirement, but concluded that they are likely legally compliant after reviewing the forms actually used by Defendants during the Class Period. (Setareh Decl., ¶¶ 34-37.)

The Settlement Share amount represents a reasonable, meaningful recovery for Class Members. Accordingly, the $1,500,000.00 Total Settlement Amount is well within the range of reasonableness.

### b. *Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members*

When a party continues to deny liability, there is an inherent risk in continuing litigation.  In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation.  *See also Mora v. Harley-Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …").

Similarly here, Defendants continue to contest liability and the propriety of class certification. Defendants' denial of liability, paired with its diligent opposition to class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement.

Moreover, this class action involves intricate legal and factual questions.  Litigating these complex claims would require substantial additional discovery and pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence.  Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues.  Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials.  As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay.  In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members.  Such a result benefits the Parties and the court system.

# V.     COMPARABLE SETTLEMENTS

So that the Court can make a comparison between this settlement and settlements in other standalone disclosure cases, the below is a list compiled from Westlaw of FCRA standalone disclosure settlements in California federal district courts going back two years from April 13, 2020.  Where the opinion states a net settlement amount as well as a gross settlement amount, both are provided:

## A.     WAGE AND HOUR SETTLEMENTS

• **Raquedan v. Centerplate of Delaware, Inc.**, No. 5:17-cv-03828-LHK (N.D. Cal. 2019). 10,193 settlement class members. Gross settlement fund of $5.45 million for an average gross settlement amount per class member of $329.26 and the estimated highest payment ot any class member is $9,019.77.

• **Williams v. Centerplate**, No. 3:11-cv-02159-H-KSC (S.D. Cal.). 10,000 settlement class members. Gross settlement fund of $650,000 for a gross settlement amount per class member of $65.

## FCRA SETTLEMENTS

• **Esomonu v. Omnicare, Inc.**, 2019 WL 499750 (N.D. Cal. Feb. 8, 2019). Gross settlement amount of $1.3 million for 43,069 class members. Gross settlement amount of $30.18 per class member, and net settlement amount of $17.31 per class member.

• **Feist v. Petco Animal Supplies, Inc.**, 2018 WL 6040801 (S.D. Cal. Nov. 16, 2018). Gross settlement amount of $1,200,000 for 37,000 class members or gross settlement amount of $32.43 per class member.

• **Ortiz v. Genco, Inc.**, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019). FCRA class of 24,425 class members. Net settlement fund for FCRA class of $1,142,845.15 for net settlement payments of $46.78 per class member. (The case also involved separate Labor Code class.)

• **Syed v. M-I LLC**, 2019 WL 3564467 (E.D. Cal. Mar. 12, 2019). 4,324 settlement class members. Net settlement fund of $201,000 for net settlement payments of $46.84 per class member.

• **Schofield v. Delta Airlines, Inc.**, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019). Gross settlement amount of $2.3 million for 44,000 class members for gross settlement payment of $52.27

1   per class member.

2   (Setareh Decl., ¶ 40.)

3   **VI.   THIS COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES AND**

4   **COSTS AS WELL AS THE CLASS ENHANCEMENT AWARD**

5   **A.    THE LEGAL STANDARD FOR ATTORNEYS' FEE AWARDS**

6   California and the Ninth Circuit, and all federal courts, for that matter, use similar criteria to

7   assess a fee request attendant to a motion for final approval, including: (i) the results achieved on

8   behalf of the class; (ii) class counsel's experience, reputation and ability; (iii) the time and labor

9   required by the litigation; (iv) whether class counsel was precluded from other work; (v) the

10  complexity of the litigation; and (vii) the contingent nature of the litigation. *See Serrano v. Priest*,

11  20 Cal. 3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048-50 (9th Cir.

12  2002) (identifying similar criteria); *see also* Herr, MANUAL FOR COMPLEX LITIGATION,

13  FOURTH, § 21.71 at 524-27 (2008) (survey of federal criteria similar to California criteria).

14  **B.    THE FEE AWARD IS REASONABLE AND SHOULD RECEIVE FINAL**

15  **APPROVAL**

16  **1.    An Excellent Result Was Achieved on Behalf of the Class**

17  The benefit achieved on behalf of class members defines a primary yardstick against which

18  any fee motion is measured. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1048.  The

19  Parties reached a Settlement in good faith after negotiating at arm's length with a professional

20  mediator and receiving a mediator's proposal. (Setareh Decl., ¶ 39.) Settlement occurred only after

21  investigation and discovery commenced.  In the course of the litigation, the parties exchanged

22  substantial information, including Defendants' background check policies and other authorization

23  forms related to employment . (Setareh Decl.., ¶¶ 34-37.) And, notably, approval of a class action

24  settlement does not require that discovery be exhaustive. *See, e.g.*, *In re Immune Response*

25  *Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where

26  informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The

27  fact that settlement results from arm's length negotiations following "relevant discovery" creates "a

28  presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at

19

*5 (N.D. Cal. 1997).  With respect to the claims asserted on behalf of the settlement Class in this case, there are significant risks that support the compromise amount.  While Plaintiffs are confident of a favorable outcome, there is substantial risk that legal developments could seriously diminish the value of their claims as discussed in Section IV(D) above.  When facing an uncertain resolution of the claims in this Action, settlement is all the more reasonable.  Indeed, the Total Settlement Amount will provide Settlement Class members with real and timely payments as opposed to the largely speculative awards that may or may not otherwise be obtained based on the various litigation risks going forward should the proposed Settlement not be approved.  Continued litigation of this lawsuit presented Plaintiff and Defendants with substantial legal risks that were (and continue to be) very difficult to assess.  In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the settlement Class Members. (Setareh Decl. ¶¶ 32-39.) The settlement amount is, of course, a compromise figure.  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant. (*Id*.) Moreover, each settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. (*Id*.) The value of this amount reflects a fair compromise well within the range of reasonableness. Given the strong case that Defendant could bring to bear to challenge liability, this is not an inconsequential sum in these challenging economic times. After analyzing the claims in this matter, Plaintiffs have concluded that the value of this Settlement is fair, adequate and reasonable. While Plaintiffs would certainly have preferred to recover more (and Defendant would have preferred to pay less), this outcome is favorable considering the risks of further litigation. On that basis, it would be unwise to pass up this settlement opportunity.  How class members respond to a class action settlement is typically addressed in concert with courts' assessments of a settlement's overall benefit to class members. *See generally, Vizcaino*, supra.  State and federal courts alike take the measure of a settlement's "fairness" with reference to the class members' reaction, and specifically the extent to which class members object, and through their objections imply a settlement's unfairness. *See, e.g., 7-Eleven Owners for Fair Franchising v. Southland Corp*., 85 Cal. App. 4th 1135, 1152-53 (2000) (only nine

objectors from a class of 5,454 was an "overwhelmingly positive" fact that supported approval of the settlement); *Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) (16 objectors out of 5,400 strongest evidence of no dissatisfaction with settlement among class members); *American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) (only one objector "of striking significance and import"). The deadline to object has not yet passed.  When the final approval motion is filed Plaintiff will provide updated information on the number of objections.

## 2.   The Experience, Reputation, and Ability of Class Counsel

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating a fee motion. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and efficiency of counsel" among fee motion criteria); *In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (Considering "the quality of Class Counsel's effort, experience and skill"). Class Counsel has had substantial experience with the causes of action here and has regularly litigated FCRA class actions. (Setareh Decl., ¶¶ 4-31).

## 3.   The Effort Required by the Litigation Justifies the Fee

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class action for which final approval is sought. *See Serrano*, 20 Cal. 3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50.  Compared to the reasonable value of the claims, Class Counsel expended substantial effort to achieve the settlement result. (Setareh Decl. ¶¶ 32-39.) Class counsel expended considerable time and resources in litigating this matter.  The work done by the attorneys working on this case includes communicating with Plaintiff, interviewing the client in order to determine the claims in the case, drafting pleadings, propounding written discovery, reviewing documents produced by Defendants, analyzing the effect of a class action settlement with overlapping FCRA claims, working up and drafting a mediation brief, preparing for mediation and preparing and reviewing documents for settlement, drafting the initial motion for preliminary approval, drafting a revised motion for preliminary approval and drafting a final approval motion

1   that includes seeking Class Counsel fees and class enhancement award. (Setareh Decl. 22-24.) The

2   "time and labor" criterion weighs in favor of an award of the requested fees.

3        **4.**      **The Complexity of the Legal and Factual Issues**

4        California law recognizes that the litigation's general complexity and "difficulty of the

5   questions involved, and the skill in presenting them" are properly considered. *Serrano*, 30 Cal. 3d at

6   49, *accord Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001).  Complexity of legal

7   issues was not extreme here, though the fee is reasonable, rendering this factor neutral. (Setareh

8   Decl., ¶¶ 26-28.)

9        **5.**      **Class Counsel Assumed Substantial Risk**

10       The novelty and challenges presented by a class action, as well as the corresponding risk

11  that the class members and class counsel will be paid no recovery or fee, is properly evaluated in

12  connection with a fee motion. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51

13  (multiplier applied to lodestar cross-check reflects risk of non-recovery).  Ninth Circuit and

14  California state courts regard circumstances in which class counsel's work is wholly contingent as a

15  factor weighing in favor of approving a negotiated fee award that approximates market rates.

16  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001). While Plaintiffs are confident of a favorable

17  outcome, there is substantial risk that legal developments could seriously diminish the value of their

18  claims as discussed above in Section IV(D).

19       **6.**      **The Fee is Reasonable Under the Common Fund Doctrine**

20       Courts in the Ninth Circuit and California generally use the "percentage method" rather than

21  the lodestar approach when awarding attorneys' fees in a common fund settlement. *See* 7 Witkin,

22  B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 (describing prevalence of

23  percentage method under California law); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)

24  ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself

25  or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Activision*

26  *Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (Patel, J.) (endorsing percentage method).

27  *See generally*, *Serrano*, 20 Cal. 3d at 25; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1   1998). The lodestar cross-check calculation need entail neither mathematical precision nor bean-

2   counting. *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306 (C.A.3 (Pa.) 2005).

3            (i)      ***Plaintiffs' Counsel Is Requesting The 31% Of The Recovery, Even***

4                     ***Though The Standard Fee Award In Class Actions Has, Over Time,***

5                     ***Resolved Itself As One-Third Of The Recovery In Common Fund***

6                     ***Cases***

7            According to a leading treatise on class actions, "No general rule can be articulated on what

8   is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a

9   reasonable fee award from a common fund in order to assure that the fees do not consume a

10  disproportionate part of the recovery obtained for the class, although somewhat larger percentages

11  are not unprecedented." *See Conte & Newberg*, Newberg on Class Actions (3rd Ed.) § 14.03.

12  Attorneys' fees that are fifty percent of the fund are typically considered the upper limit, with thirty

13  to forty percent commonly awarded in cases where the settlement is relatively small. *See Id.*; *see*

14  *also*, *Van Vranken v. Atlantic Richfield Company*, 901 F. Supp. 294 (N.D. Cal. 1995) (stating that

15  most cases where 30-50 percent was awarded involved "smaller" settlement funds of under $10

16  million). The proposed 31% fee award is consistent with the average fee award in class actions.

17  Awards of 33 percent or more are common in court-approved class actions litigated and settled by

18  Class Counsel and other firms across the state. (Setareh Decl., ¶ 27.)  Class counsel has been issued

19  one-third of the settlement amount in fees in a number of cases in the Northern District, including

20  recently in *Burnthorne-Martinez v. Sephora USA, Inc.*, 2018 WL 5310833, at *3 (N.D.Cal., 2018),

21  *Garza v. Brinderson Constructors L.P.*, Northern District of California Case No. 5:15-cv-05742-

22  EJD ECF No. 80, and *Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, at *13 (N.D.Cal.,

23  2018). (Id.)  The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable

24  percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts

25  should use a "benchmark" percentage of 25% of the total fund. *Paul, Johnson, Alston & Hunt v.*

26  *Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th

27  Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

28  The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the

work necessary to achieve those results supports such an adjustment of the benchmark.  In fact, while the Ninth Circuit identified twenty-five percent as a fee percentage that is presumptively reasonable, the custom and practice in class actions is to award approximately one-third of a fund as a fee award. *See Chavez v. Netflix, Inc*., 162 Cal. App. 4th 43, 66, n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.") (emphasis added). Class Members will have the opportunity to object to the proposed award of fees and costs (or any other aspect of the settlement, if they so choose).

### (ii)     *Plaintiffs Seek 31% Of The Settlement Fund In Fees And Costs of No More Than $15,000*

The compensation sought for Class Counsel is also fair and reasonable. Here, the gross settlement fund obtained through the efforts of Class Counsel is $1,500,000. Class Counsel has agreed to request no more than $460,000 in fees from the gross settlement amount, or 31% of the gross settlement amount. Class Counsel has agreed to request no more than $15,000 in costs (even though actual costs have exceeded this amount and is currently at $16,275.50). (Setareh Decl., ¶ 26.)  Compared to a lodestar based on current hours and reasonably projected future hours of approximately $235,562.50, the total compensation to Class Counsel is consistent with their lodestar. The multiplier necessary to reach the total requested compensation is only 1.95, a multiplier below the multipliers of 3 or more that are routinely approved in class settlements. Plaintiffs have actually incurred costs of $16,275.50 in this matter (but subject to a cap of $15,000.00 pursuant to the parties Settlement Agreement), including mediation fees, incurred Westlaw charges, PACER charges, CourtCall fees, travel expenses, postage charges and printing charges. Plaintiff estimate incurring costs of $75.00 for future CourtCall expenses to attend the Final Approval hearing.  Thus, Plaintiffs request the maximum permitted recovery of $15,000.00 in costs, which is less than the $16,275.50 amount actually incurred by Class Counsel. (Settlement, § III.K.16.)  But perhaps most importantly, the proposed attorneys' fees and costs were disclosed to the Class Members in the Notice issued to Class Members.

7.    **A Lodestar Analysis Supports The Requested Fee Despite The Widely Recognized Limitations Of The So-Called "Lodestar" Method**

California and federal courts recognize the utility of a lodestar "cross-check." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 46 (2000). A lodestar "cross-check" analysis typically happens in three steps. *Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008), *accord Vizcaino*, 290 F.3d at 1047.  First, a trial court must determine a baseline guide or "lodestar" figure based on the time spent and reasonable hourly compensation for each attorney involved in the case. *Serrano*, at 48.  Second, the court sets a reasonable hourly fee to apply to the time expended, with reference to the prevailing rates in the geographical area in which the action is pending. *Bihun v. AT&T Information System*, 13 Cal. App. 4th 976, 997 (1993) (16 years ago, affirming a $450 per hour rate for a Southern California litigation attorney).  Finally, a "multiplier" of the base lodestar is set with reference to the factors described in detail in this brief.  Courts often apply a positive multiplier to the lodestar to determine a reasonable fee. *E.g. Vizcaino, supra* at 1051 (positive multiplier of 3.65.)  Across all jurisdictions, multipliers of up to four are frequently awarded. NEWBERG, §14.03 at 14.  Often, multipliers of greater than four are warranted. Looking at the work of attorneys for Plaintiff in this matter (and excluding paralegals), the lodestar calculation for Setareh Law Group is $235,562.50 calculated as follows:

| Attorney | Year Admitted | Hourly Rate | Time | Lodestar |
|----------|---------------|-------------|------|----------|
| Shaun Setareh | 1999 | $850.00 | 95.275 | $80,983.75 |
| H. Scott Leviant | 1999 | $750.00 | 66.25 | $49,687.50 |
| Thomas Segal | 2002 | $700.00 | 1.0 | $700.00 |
| William M. Pao | 2002 | $650.00 | 105.2 | $68,380.00 |
| Farrah Grant | 2013 | $450.00 | 0.4 | $180.00 |
| Stacey Shim | 2015 | $375.00 | 67.6 | $25,350.00 |

| | | | | | |
|---|---|---|---|---|---|
| Alexandra R. McIntosh | 2018 | $350.00 | 11.0 | | $4,025.00 |
| Lilit Ter-Astvatsatryan | 2018 | $350.00 | 17.875 | | $6,256.25 |
| | | | | **TOTAL** | $235,562.50 |

(Setareh Decl., ¶ 16.) The figures for estimated time above reflect the best estimates of Class

Counsel, based on their experience and the settlement class size, for the time that will be expended

by Class Counsel between the filing of this motion and the hearing of Plaintiffs' Motion for Final

Approval. (*Id.*)

This lodestar figure is in line with the requested fee, requiring a multiplier of 1.95. (Setareh

Decl., ¶ 17.) This is in the typical multiplier range typically applied by district courts. See, e.g.,

*Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar

multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0

range); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D.

Cal. Feb. 6, 2013) (multiplier of 2.86); *Di Giacomo v. Plains All Am. Pipeline*, Nos. 99–4137 & 99–

4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del

Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re Aremissoft

Corp. Sec. Litig.*, 210 F.R.D. 109, 134–35 (D.N.J. 2002) (4.3 multiplier). The multiplier needed to

align the negotiated fee award with the attorney hours expended here is below the multipliers of

three or more routinely approved in class actions. (Setareh Decl., ¶¶ 18-20.) Accordingly, the

lodestar cross-check affirms that the fee award that has been preliminarily approved does in fact fall

easily within the range of reasonableness. (*Id.*)  The Ninth Circuit has similarly recognized that the

lodestar method "creates incentives for counsel to spend more hours than may be necessary on

litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early

settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002).  As a corollary,

a defendant willing to recognize a potential error and settle at an early stage would face the

increased risk that an early settlement overture would be rejected.  That did not happen here, in part

because a percentage of the fund award encourages efficient litigation. The Ninth Circuit has thus

1   cautioned that, while a lodestar method can be used as a cross check on the reasonableness of fees

2   based on a percentage of recovery method if a district court in its discretion chooses to do so, a

3   lodestar calculation is not required and it did "not mean to imply that class counsel should

4   necessarily receive a lesser fee for settling a case quickly." *Id*. The percentage of recovery method

5   "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its

6   cost are unjustly enriched at the successful litigant's expense." *Staton*, 327 F.3d 938, 967 (9th Cir.

7   2003). This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment

8   by distributing the costs of litigation among those who benefit from the efforts of others. *Paul,*

9   *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) It is only fair that every class

10  member who benefits from the opportunity to claim a share of the settlement pay his or her pro rata

11  share of attorney's fees, and Plaintiff's request for fees here means that Class Counsel seek an

12  amount of fees less than the amount Class Counsel would likely receive if they represented each

13  class member individually. Typical contingent fee contracts of plaintiffs' counsel provide for

14  attorney's fees of about 40% of any recovery obtained for a client. (Setareh Decl., ¶ 43.) It would be

15  unfair to compensate Class Counsel here at a substantially lesser rate because they obtained relief

16  for hundreds of class members.  To the contrary, equitable considerations dictate that Class Counsel

17  be rewarded for achieving a settlement that confers benefits among so many people, especially

18  without protracted litigation. The result achieved by Class Counsel merits an award of attorney's

19  fees equal to 31% of the total recovered value in this case.

20  **B.      THE ENHANCEMENT AWARD IS REASONABLE**

21          Enhancement awards serve to reward the named plaintiffs for the time and effort expended

22  on behalf of the class, and for exposing herself to the significant risks of litigation.  "Courts

23  routinely approve incentive awards to compensate named plaintiffs for the services they provided

24  and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-*

25  *Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175

26  F.R.D. 270, 272 (S.D. Ohio 1997). In *CocaCola*, for example, the court approved enhancement

27  awards of $300,000 to each named plaintiff in recognition of the services they provided to the class

28  by responding to discovery, participating in the mediation process and taking the risk of stepping

forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; see *also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award). Here, Plaintiffs' counsel requests that the Court grant an enhancement award of $10,000.00 to Plaintiff. The amount of the enhancement award requested for Plaintiff is reasonable given the risks undertaken by Plaintiff.  Taking the risk of filing a lawsuit against an employer deserves reward, especially in light of the settlement achieved by Plaintiff.  Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action. Plaintiff worked diligently with counsel to prepare the action, traveled to and attended the mediation and conferred with counsel regarding settlement negotiations. (Setareh Decl., ¶ 41; Declaration of Andrew Quiruz ("Quiruz Decl."), ¶ 7.) Plaintiff undertook to prosecute the case despite the risk of a cost judgment against him, and despite the potential risk that prospective employers would hold it against them. (Quiruz Decl., ¶¶ 8-9.)  The requested enhancement award is reasonable and should be approved.

### C.  THE SETTLEMENT ADMINISTRATOR'S EXPENSES SHOULD BE APPROVED

The charges for the Settlement Administrator Phoenix Settlement Administrators are capped at $65,000.00. (Lee Decl. ¶  25.) Phoenix's costs to administer this settlement match the $65,000 amount allocated in the Settlement Agreement and stated in the class notice. (*Id.*; Settlement § III.K.18.)  These costs are reasonable and should be approved. (Setareh Decl. ¶ 42.)

///

///

///

///

///

///

///

///

///

///

1 | ///

2 | **VII.    <u>CONCLUSION</u>**

3 This settlement is fair and reasonable, especially given the claims and the potential defenses

4 to them and to class certification. Thus, the $1,500,000 settlement is worthy of final approval. And

5 because Plaintiff's counsel were required to expend resources and take risks to obtain that result,

6 fair compensation is also reasonable. For the reasons set forth herein, Plaintiff request that the Court

7 award Plaintiff's counsel $460,000 in fees, which is 31% of the gross settlement and roughly 1.95

8 times the lodestar of Plaintiffs' counsel and $15,000.00 in costs.

9

10 DATED:  August 6, 2020                    SETAREH LAW GROUP

11

12                                   _/s/ Shaun Setareh_
                                     SHAUN SETAREH
13                                   WILLIAM M. PAO
                                     Attorneys for Plaintiff
14                                   ANDREW QUIRUZ