UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREW QUIRUZ, on behalf of himself, all others similarly situated and as a representative of other aggrieved employees,<br><br>Plaintiff,<br><br>v.<br><br>SPECIALTY COMMODITIES, INC. and ARCHER-DANIELS-MIDLAND COMPANY,<br><br>Defendants. | Case No. 17-cv-03300-BLF<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; AND GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**<br><br>[Re: ECF 94, 99] |

Before the Court is Plaintiff Andrew Quiruz's Motion for Final Approval of Class and Collective Action Settlement (ECF 94, 99). The Court has considered the parties' submissions, the oral argument of counsel, the objections received by the Court, and the relevant legal authorities. The motion is GRANTED for the reasons discussed below.

**I.      BACKGROUND**

Plaintiff brings this hybrid class and collective action against Defendants Specialty Commodities, Inc. ("SCI") and Archer-Daniels-Midland Company ("ADM") for alleged violations of federal and state laws governing credit reporting and wage-and-hour requirements. Plaintiff was employed as a warehouse worker by SCI, which is owned and operated by ADM. In the operative second amended complaint ("SAC"), Plaintiff alleges that Defendants obtain and use credit reports on prospective, current, and former employees in violation of the Fair Credit Reporting Act ("FCRA") and other credit reporting statutes. *See* SAC ¶ 2, ECF 87. Plaintiff also alleges that Defendants fail to provide employees with required meal and rest breaks, overtime and

double time pay, and accurate wage statements in violation of the Fair Labor Standards Act ("FLSA") and the California Labor Code.  *See* SAC ¶ 3.

The SAC contains twelve claims: (1) violation of the FCRA, 15 U.S.C. §§ 1681b(b)(2)(A); (2) violation of the FCRA, 15 U.S.C. §§ 1681d(a)(1) and 1681g(c); (3) violation of the Investigative Consumer Reporting Agencies Act, Cal. Civ. Code § 1786 *et seq*.; (4) violation of the Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 *et seq*.; (5) failure to provide meal periods in violation of Cal. Lab. Code §§ 204, 223, 226.7, 512, and 1198; (6) failure to provide rest periods in violation of Cal. Lab. Code §§ 204, 223, 226.7, and 1198; (7) failure to pay hourly wages in violation of Cal. Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1197.1, and 1198; (8) failure to pay employees for all hours worked in violation of the FLSA, 29 U.S.C. § 216(b); (9) failure to provide accurate written wage statements in violation of Cal. Lab. Code § 226(a); (10) failure to timely pay all final wages in violation of Cal. Lab. Code §§ 201, 202, and 203; (11) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; and (12) penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq*.

The parties have entered into a settlement agreement with respect to these claims ("Settlement").  *See* Settlement, ECF 70-1.  The Settlement provides that Defendants will make a total payment of $1,500,000, to be allocated as follows: (1) an incentive award to Plaintiff in the amount of $10,000; (2) fees and expenses of the settlement administrator, not to exceed $65,000; (3) class counsel fees of up to $460,000 plus costs of up to $15,000; (4) payment of $30,000 to the California Labor and Workforce Development Agency ("LWDA") as its 75% share of the $40,000 allocated to civil penalties under PAGA; and (5) net settlement funds available for distribution to the class and collective in the amount of $920,000 before taxes.

The Settlement provides for three Rule 23 subclasses:  the California Non-Exempt Employee Subclass, the California Exempt Employee Subclass, and the FCRA Subclass.  The Settlement also provides for one FLSA settlement collective, the California FLSA Collective, which is comprised of California Non-Exempt Employee Subclass members who timely and properly opt in to the FLSA claims.

The subclasses and collective are defined as follows:

California Non-Exempt Employee Subclass
Any person who was employed by Defendants in an hourly-paid or salaried non-exempt position in California at any time from May 3, 2013 to the date that the District Court granted preliminary approval of the Settlement.

California Exempt Employee Subclass
Any person who was employed by Defendants in a salaried exempt position in California at any time from May 3, 2016 to the date that the District Court granted preliminary approval of the Settlement.

FCRA Subclass
Any person who (1) was employed by Defendants, or (2) applied for employment with Defendants, at any time from May 3, 2012 to the date that the District Court granted preliminary approval of the Settlement.

California FLSA Collective
Each California Non-Exempt Employee Subclass Member who timely and properly opts into the FLSA claims in the case using an FLSA Opt-In Consent Form pursuant to the terms set forth in the Settlement Agreement, thereby becoming a California FLSA Collective Member.

The Settlement does not include a PAGA subclass because PAGA penalties will be paid to the members of the California subclasses (and the LWDA), rendering a distinct PAGA subclass unnecessary.

The $920,000 in net settlement funds are to be allocated among the subclasses and collective as follows: $510,000 to the California Non-Exempt Employee Subclass; $50,000 to the California Exempt Employee Subclass; $300,000 to the FCRA Subclass; $50,000 to the California FLSA Collective; and $10,000 in PAGA penalties to the California subclass members. The members of the subclasses will not need to submit a claim. The settlement administrator will send each eligible class member who does not opt out of the Settlement a single check that includes all settlement shares and PAGA penalties due. The settlement administrator will send a separate check to each individual who properly opts in to the California FLSA Collective.

On April 3, 2020, the Court granted preliminary approval of the Settlement, and conditionally certified the subclasses and collective. *See* Order Granting Prelim. Appr., ECF 92. Phoenix Settlement Administrators ("Phoenix") was retained to administer the Settlement. Plaintiff now seeks final approval of the Settlement, as well as attorneys' fees, costs, and an incentive award.

## II. LEGAL STANDARDS

### A. Rule 23

Court approval is required for settlement of a class action. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). In order to grant final approval of a class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

### B. FLSA

Court approval also is required for settlement of an FLSA collective action. *See De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2020 WL 1531331, at *6 (N.D. Cal. Mar. 31, 2020). "The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval." *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 1477630, at *3 (N.D. Cal. Apr. 15, 2014). Most courts in this circuit first determine whether the named plaintiff is "similarly situated" to the individuals in the collective and then determine whether the settlement constitutes "a fair and reasonable resolution of a bona fide dispute." *De Leon*, 2020 WL 1531331, at *7 (quotation marks and citation omitted). N.D. Cal. Mar. 31, 2020)" *Id.* "[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a [class action] settlement under Rule 23(e)." *Id.* (quotation marks and citation omitted).

### C. PAGA

Finally, court approval is required for settlement of a PAGA claim. *See Hudson v. Libre Tech. Inc.*, No. 3:18-CV-1371-GPC-KSC, 2020 WL 2467060, at *8 (S.D. Cal. May 13, 2020). "While PAGA requires a trial court to approve a PAGA settlement, district courts have noted there is no governing standard to review PAGA settlements." *Id.* Some district courts have looked to the factors governing Rule 23 class action settlements for guidance in evaluating PAGA settlements. *See, e.g., Wanderer v. Kiewit Infrastructure W. Co.*, No. 2:18-CV-02898 WBS-DB, 2020 WL 5107618, at *2 (E.D. Cal. Aug. 31, 2020). This Court does not find that approach to be

4

appropriate given the Ninth Circuit's recent emphasis on the differences between representative actions under PAGA and class actions under Rule 23. *See Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 851 (9th Cir. 2020). In *Canela*, the Ninth Circuit observed that "in a PAGA suit, the court does not inquire into the named plaintiff's and class counsel's ability to fairly and adequately represent unnamed employees – critical requirements in federal class actions." *Id*. (quotation marks and citation omitted). The Ninth Circuit went on to make the point that "unlike Rule 23(a), PAGA contains no requirements of numerosity, commonality, or typicality." *Id*. (quotation marks and citation omitted).

Other district courts have found it appropriate to approve a PAGA settlement where "the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Chamberlain v. Baker Hughes, a GE Co., LLC*, No. 1:19-cv-00831-DAD-JLT, 2020 WL 4350207, at *4 (E.D. Cal. July 29, 2020). The statute requires that 75 % of civil penalties recovered be allocated to the LWDA and 25 % be allocated to aggrieved employees. *See id.* PAGA's goals include "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Id*. (quotation marks and citation omitted). The Court finds this standard to be a sensible means for evaluating a PAGA settlement and applies it in this case.

### III. DISCUSSION

In considering Plaintiff's motion, the Court first evaluates the settlement of the class and collective claims. Second, the Court evaluates the settlement of the PAGA claim. Third, the Court takes up Plaintiff's motion for attorneys' fees and costs. Fourth and finally, the Court addresses Plaintiff's request for an incentive award.

#### A. Class and Collective Claims

As noted above, the settlement of Plaintiff's class claims may be approved if the Court determines that (a) the class meets the requirements for certification under Rule 23 and (b) the settlement is fair, reasonable, and adequate. *See Staton*, 327 F.3d at 952. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc.*

*v. Dukes*, 564 U.S. 338 (2011). The Court considers "essentially the same" factors in evaluating settlement of an FLSA collective action as it considers in evaluating settlement of a Rule 23 class action. *De Leon*, 2020 WL 1531331, at *7. Accordingly, the settlement of the class and collective claims in this case are considered together as follows. *See id.* (evaluating settlement of class and collective actions together).

### 1. Notice

The Court previously approved Plaintiff's notice plan when it granted preliminary approval of the Settlement. *See* Order Granting Prelim. Appr., ECF 92. At that time, the Court carefully reviewed Plaintiff's proposed notice plan and requested that Plaintiff make certain changes to the proposed class notice, which Plaintiff did. *See* Amended Class Notice, ECF 89. The Court also requested that Plaintiff submit a copy of the the proposed FLSA opt-in consent form, which had been omitted from Plaintiff's initial submission in support of preliminary approval. *See* FLSA Opt-In Consent Form, ECF 86. After Plaintiff made the requested revisions and submission, the Court granted preliminary approval. *See* Order Granting Prelim. Appr., ECF 92.

Plaintiff has submitted evidence of his implementation of the approved notice plan, including the declaration of Kevin Lee on behalf of the settlement administrator, Phoenix. *See* Lee Decl. ECF 97. On May 19, 2020, Phoenix mailed the Notice Packet via U.S. first class mail to all 25,789 class members. Lee Decl. ¶ 5. On June 3, 2020, Phoenix mailed a reminder Postcard to all class members who had not responded. Lee Decl. ¶ 6. The Notice Packet mailed to the California Non-Exempt Employee Subclass members contained an FLSA opt-in consent form. Lee Decl. ¶ 5. Of the 625 FLSA opt-in consent forms that were distributed, Phoenix has received 126 claim forms. Lee Decl. ¶ 12. Of the Notice Packets mailed out to the 25,789 class members, only 784 were undeliverable, due to lack of availability of an updated address. Lee Decl. ¶ 11.

On June 3, 2020, pursuant to the Class Action Fairness Act ("CAFA"), Phoenix mailed notice of the Settlement to the Attorneys General of all fifty states, six United States territories, and the United States Attorney General. Lee Decl. ¶ 7. In an excess of caution, in light of the COVID-19 pandemic, Phoenix also sent email notice to all twenty-five states and territories for which an email address for CAFA notices could be located. Lee Decl. ¶ 8.

The Court is satisfied that the class members were provided with the best notice practicable, and that such notice was adequate. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("[T]he procedure followed by Kansas, where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process."); *Tumampos v. Cathay Pac. Airways LTD.*, No. 16-CV-06208, 2018 WL 5603702, at *10 (N.D. Cal. Sept. 21, 2018) (notice was adequate where "the Settlement Administrator mailed the class notice by first-class mail to all 445 members of the settlement class at their last known address as reflected in Defendant's business records.").

### 2. Requirements for Certification under Rule 23

A class action is maintainable only if it meets the four requirements for certification set forth in Rule 23(a): (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court concluded that these requirements have been met when it granted preliminary approval. *See* Order Granting Prelim. Appr., ECF 92. The Court is not aware of any new facts that would alter its conclusion. However, the Court reviews the Rule 23 requirements briefly.

Turning first to the Rule 23(a) prerequisites, the Court has no difficulty finding that joinder of all 25,789 class members would be impracticable. *See* Lee Decl. ¶ 3, ECF 97. "[N]umerosity

is presumed where the plaintiff class contains forty or more members." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).  The commonality requirement is met because the key issues in the case are the same for the members of each subclass:  whether Defendants violated the relevant wage-and-hour or credit reporting requirements.  "All questions of fact and law need not be common to satisfy the commonality requirement.  The existence of shared legal issues with divergent factual predicates is sufficient." *Gonzalez v. United States Immigration & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) (quotation marks, citation, and brackets omitted).  Plaintiff's claims appear to be "be "reasonably coextensive with those of absent class members," which is all that is required to meet the typicality requirement.  *Id.* at 809.  Finally, the Court has no reservations regarding the abilities of Plaintiff and class counsel to represent the class, and the record discloses no conflict of interest that would preclude Plaintiff from acting as class representative.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted).

With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  In the present case, common questions regarding Defendants' alleged violation of the relevant wage-and-hour and credit reporting requirements predominate.  Given that commonality, and the number of class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

The Court finds that the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate.

### 3. Fair, Reasonable, and Adequate

"Federal Rule of Civil Procedure 23(e) requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quotation marks and citation omitted).  Rule 23(e)(2) sets forth several factors to be considered by the Court in determining whether a class action settlement is fair, reasonable, and adequate:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3);

    (D)    The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors were added to Rule 23 when it was amended in 2018. The Advisory Committee Notes observe that prior to the 2018 amendment, many circuit courts had developed their own lists of factors for use in evaluating class action settlements. Fed. R. Civ. Proc. 23, Advisory Comm. Notes. In the Advisory Committee's view, lengthy lists of factors are not necessarily the best means by which to evaluate a proposed settlement, as "[t]he sheer number of factors can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." *Id.* Subsection (e)(2) is intended to focus the parties and the courts on "a shorter list of core concerns" that are most relevant to the Rule 23(e) inquiry. *Id.*

Prior to the 2018 amendment, the Ninth Circuit had developed a list of eight factors, referred to as the "*Churchill* factors," for use in evaluating class action settlements. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Those factors are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth*, 654 F.3d at 946 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Given that Rule 23 has been amended to list the factors most central to approval of a class action settlement, the Court begins its analysis with those factors. *See Walters v. Target Corp.*, No. 3:16-CV-1678-L-MDD, 2020 WL 6277436, at *5 (S.D. Cal. Oct. 26, 2020) (evaluating class action settlement under Rule 23(e)(2) factors). "Several of the *Churchill* factors were incorporated into Rule 23(e)(2) as amended." *Id.* The Court considers the remaining *Churchill* factors, as relevant. *See Churchill*, 361 F.3d at 576 n.7 ("Because the settlement evaluation factors are non-exclusive, discussion of those factors not relevant to this case has been omitted."). Consideration of *Churchill* factors is not precluded by the 2018 amendment to Rule 23. The Advisory Committee Notes make clear that the goal of the 2018 amendment was "not to displace any factor" developed by the courts, but rather to focus the courts and counsel on the "core concerns" enumerated in Subsection (e)(2). Fed. R. Civ. Proc. 23, Advisory Comm. Notes.

### a. Rule 23(e)(2) Factors

The Court finds that all of the Rule 23(e)(2) factors favor approval of the Settlement.

#### i. Rule 23(e)(2)(A) – Adequate Representation

Plaintiff and class counsel have adequately represented the class. Plaintiff has submitted a declaration describing the time and effort he has devoted to litigating this case. *See* Quiruz Decl. ¶¶ 3-7, ECF 98-1. Plaintiff's counsel, Setareh Law Group, has handled hundreds of wage-related class actions and has successfully settled more than 100 employment class actions in the past decade. Setareh Decl. ¶ 4, ECF 95. The Setareh Law Group also has acted as counsel in multiple actions involving FCRA violations. Setareh Decl. ¶ 11. Shaun Setareh, the principal of the firm and Plaintiff's lead attorney in this case, recently received the California Lawyer Attorney of the Year Award from the Daily Journal. Setareh Decl. ¶ 7. The Court has no difficulty concluding that Plaintiff and class counsel have zealously and capably represented the class.

#### ii. Rule 23(e)(2)(B) – Arms' Length Negotiation

The Settlement of the class and collective claims was negotiated at arms' length. The parties participated in a mediation with Michael E. Dickstein, a nationally recognized mediator, on April 12, 2018. Setareh Decl. ¶ 39. After exchanging mediation briefs and mediating for an entire day, the parties were able to reach a settlement. *Id.*

### iii. Rule 23(e)(2)(C) – Adequate Relief

Class counsel obtained adequate relief for the class, as the settlement amount of $1,500,000 is substantial. For the California Non-Exempt Employee Subclass, the highest payment is approximately $2,105.68, the lowest payment is approximately $5.82, and the average payment is approximately $816.00. Lee Decl. ¶ 14. For the California Exempt Employee Subclass, the comparable high-low figures are $784.61 and $24.78, with the average individual settlement payment being approximately $476.19. Lee Decl. ¶ 18. For the FCRA Subclass, each of the 25,038 employees who did not opt out will receive an equal share of the allocated $300,000.00, or approximately $11.98. Lee Decl. ¶ 22. For the 126 employees who opted in to the California FLSA Collective, the highest payment is approximately $206.44, the lowest payment is approximately $1.71, and the average individual settlement payment is approximately $86.46. Lee Decl. ¶ 13.

While class and collective members potentially could obtain a greater recovery through litigation, Defendants have denied any wrongdoing and raised forty-five affirmative defenses. *See* Answer, ECF 28. Thus, it is not clear that Plaintiff would prevail if this case were to proceed. Plaintiff would face significant hurdles, including a motion for summary judgment and opposition to class certification. Litigation likely would be protracted, because the case was less than a year old when settlement was reached, and no motions had been filed yet. "[E]ven with a strong case, further litigation would be time-consuming and expensive for both sides." *Greko v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013).

In contrast, class and collective members will receive real and substantial benefits immediately upon approval of the Settlement. The claims process is extremely streamlined. Class members need not file any claim, as the settlement administrator will send each eligible class member who does not opt out of the Settlement a check that includes all settlement shares and PAGA penalties due. The settlement administrator likewise will send a check to each individual who properly opts in to the California FLSA Collective.

The requested attorneys' fees are fair for the reasons discussed in section III.C., below. Moreover, the parties have identified and provided a copy of the Settlement, containing all terms

11

upon which agreement has been reached.  *See* Settlement, ECF 70-1.

In short, the Court finds that the relief obtained is adequate, particularly in light of the risks of continued litigation.  *See Greko*, 2013 WL 1789602, at *5 ("Given the risks associated with continued litigation, the settlement agreement, which offers an immediate and certain award for all of the class members, appears to be in the best interests of plaintiff and the class.").

### iv.  Rule 23(e)(2)(D) – Equitable Treatment

The Settlement treats class members equitably relative to each other.  Distribution to the California Non-Exempt Employee Subclass and the California FLSA Collective depends on the number of weeks worked by the employee, while distribution to the California Exempt Employee Subclass depends on the number of paystubs issued to the employee.  *See* Settlement § III.K.15.  Distribution of PAGA penalties likewise will be based on the employee's workweek or paystubs.  *See id.*  Those distribution methods are directly related to the California Labor Code violations giving rise to the claims.  Distribution to the FCRA Subclass will be in equal shares to all subclass members.  That distribution method is appropriate given that the claims at issue relate to Defendants' conduct in obtaining background and credit checks rather than any wage-and-hour violations.

### b.  *Churchill* Factors

The Court also finds that final approval is supported by *Churchill* factors that are not encompassed in Rule 23(e)(2).  The eighth *Churchill* factor, the reaction of the class, is particularly relevant.  The settlement administrator, Phoenix, received zero requests for exclusion and zero objections from the California Non-Exempt Employee Subclass; one request for exclusion and zero objections from the California Exempt Employee Subclass; and twenty-two requests for exclusion and four objections from the FCRA Subclass.  *See* Lee Decl. ¶¶ 16-24, ECF 97; Suppl. Lee Decl. ¶¶ 3-8, ECF 102.  The four objections are entitled to little weight, as discussed below.  The 23 opt-outs are approximately 0.09% of the 25,005 class members who received notice.  Opt-out percentages of nearly 5% have been deemed so "overwhelmingly positive" as to support approval of the class action settlement.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving settlement where  4.86% of the class

opted out). Accordingly, the Court concludes that the positive response of the class members provides an additional ground for approving the Settlement.

The sixth *Churchill* factor, the experience and views of counsel, also is relevant here. "Class Counsel believes that the Settlement reached is fair to the Class and confers substantial benefits on the Class, providing all Class Members with recoveries in the near term." Setareh Decl. ¶ 31. "[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

### c. Conclusion

After considering the Rule 23(e)(2) factors and the relevant *Churchill* factors, the Court concludes that the Settlement is fair, reasonable, and adequate.

### 4. Objections

Four individuals submitted objections to the Settlement. *See* Lee Decl. ¶ 24, ECF 97; Suppl. Lee Decl. ¶ 8, ECF 102.

### a. Randy Dillon

Randy Dillon, who identifies himself as a former ADM employee, submitted an objection based on his belief that Defendant ADM "handles all affairs in a professional, safe, and fair manner." Lee Decl. Exh. F, ECF 97. Mr. Dillon states that he does "not support these type of lawsuits." *Id.* Mr. Dillon's belief that ADM did not engage in wrongdoing is not a basis for denying the motion for final approval. ADM in fact denies "any liability or wrongdoing of any kind associated with the claims alleged in the Action." Settlement § II.C, ECF 70-1. However, ADM and SCI made the decision to settle the claims, and nothing in Mr. Dillon's submission suggests that decision should not be honored.

This objection is OVERRULED.

### b. Joshua Durham

Joshua Durham submitted an email with the subject line "Notice of Objection," stating as follows: "I never worked for ADM in California so this case has nothing to do with me." Lee Decl. Exh. G, ECF 97. This email does not actually challenge the Settlement or provide any basis

13

for denying the motion for final approval.

This objection is OVERRULED.

### c. Jun Kyu Jeon

Jun Kyu Jeon submitted an email with the subject line "Notice of Objection," stating as follows: "-Grounds for the objection: Not interested in any way," and "-Appearance: I will not in any way participate in this class action." Lee Decl. Exh. H, ECF 97. This email does not actually challenge the Settlement or provide any basis for denying the motion for final approval.

This objection is OVERRULED.

### d. Deborah Shults

Deborah Shults submitted four statements. *See* Suppl. Lee Decl. Exh. A, ECF 102. On August 10, 2020, she submitted an email with the subject line "Notice of Objection in Quiruz v. Archer Daniels Midland Company, et al." *Id.* That email states that the Settlement amount "should be increased by ten times" due to the egregious nature of Defendants' conduct. *Id.*

Later in the day on August 10, 2020, Ms. Shults submitted a second email stating that she will accept the settlement and retracting her objection. *See* Suppl. Lee Decl. Exh. A, ECF 102.

On August 19, 2020, Ms. Shults submitted a third email stating that, after further reflection, she did wish to object to the Settlement and to "refer the case back to litigation." Suppl. Lee Decl. Exh. A, ECF 102.

On August 26, 2020, Ms. Shults submitted a letter reiterating her opinion that the Settlement amount should be increased "in the amount of ten times the current Settlement reached between the parties." Suppl. Lee Decl. Exh. A, ECF 102.

Ms. Shults' assertion that the settlement should be ten times greater is devoid of supporting facts or legal citations. Accordingly, it does not provide a basis for denying the motion for final approval. *See Young v. LG Chem Ltd.*, 783 F. App'x 727, 737 (9th Cir. 2019) (finding objection to class action settlement unpersuasive where "contradicted by the record or devoid of analysis and legal citations").

This objection is OVERRULED.

**B.     PAGA Claim**

As discussed above, the Court will approve settlement of a PAGA claim if "the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Chamberlain,* 2020 WL 4350207, at *4.

With respect to the statutory requirements, PAGA provides that 75 % of civil penalties recovered must be allocated to the LWDA and 25 % must be allocated to aggrieved employees. *See id.* That requirement is met here, as the PAGA recovery is $40,000, of which $30,000 is allocated to the LWDA and $10,000 to class members.

The Court finds the Settlement to be fair, reasonable, and adequate for the reasons discussed above. Moreover, the Settlement will promote PAGA's public policy goals, which include "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Chamberlain,* 2020 WL 4350207, at *4. (quotation marks and citation omitted). Plaintiff's representative PAGA claim reached conduct not directly addressed by the state, and resulted in the state's recovery of $30,000 in civil penalties. Imposition of those penalties will encourage future compliance with the California Labor Code.

**C.     Attorneys' Fees and Costs**

Plaintiff seeks an award of attorneys' fees in the amount of $460,000, representing 31% of the gross settlement amount, and costs in the amount of $15,000.

**1.     Legal Standard**

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of requested fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 1990). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . . [courts] may rely on summaries submitted by the

16

attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (quotation marks and citation omitted).

An attorney also is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) quotation marks and citation omitted).

### 2. Discussion

Addressing costs first, the Court has no hesitation in approving an award of costs in the requested amount of $15,000. Class counsel has submitted a declaration showing that costs actually exceed the requested amount. *See* Setareh Decl. ¶ 21 & Exh. 1, ECF 95. Those costs include mediation fees, Westlaw charges, PACER charges, courtcall fees, travel expenses, postage charges, and printing charges. Based on counsel's declaration, the Court finds an award of costs in the amount of 15,000 (the maximum amount permitted under the Settlement) to be reasonable and necessary.

The Court likewise concludes that an award of attorneys' fees in the requested amount of $460,000 is reasonable in this case. Using the percentage-of-recovery method, the amount requested represents 31% of the gross settlement amount, which is at the high end of the range normally awarded by courts within the Ninth Circuit. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage."). However, all of the relevant factors support the award: counsel obtained a good result for the class, there was a significant risk in proceeding with the litigation, counsel's work on the case was of a high quality, and counsel has litigated this case completely contingent on outcome – the firm has not been paid for any of its time or expenses incurred to date. *See* Setareh Decl. ¶¶ 22-25. An award of 31% of the gross settlement recovery is consistent with awards in similar class actions. *See* Setareh Decl. ¶ 27. Class counsel's intent to seek fees in the amount of 31% of the $1,500,000 settlement amount was disclosed in the notice sent to the class, and the Court has not received any objections to the proposed fees award. *See* Lee Decl. ¶ 5

1   & Exh. A, ECF 97.

2       A lodestar cross-check confirms the reasonableness of the requested fee award. Class
3   counsel's total lodestar is $235,562.50. *See* Setareh Decl. ¶ 17. This lodestar figure is supported
4   by counsel's documentation of reasonable hourly rates and time expended on the case. *See*
5   Setareh Decl. ¶¶ 12-19. The lodestar figure may be increased or decreased by a multiplier that
6   reflects factors such as "the quality of representation, the benefit obtained for the class, the
7   complexity and novelty of the issues presented, and the risk of nonpayment." *Bluetooth*, 654 at
8   942 (quotation marks and citation omitted). The foremost consideration is the benefit obtained for
9   the class. *Id.*

10      Plaintiff requests a multiplier of 1.95 to bring the lodestar amount up to the requested
11  award of $460,000. The Court finds the requested multiplier to be appropriate under the facts
12  listed above, because counsel obtained an excellent result for the class and collective, litigated the
13  case in a highly professional manner, and faced a significant risk of nonpayment given the
14  contingent nature of the representation. The Court notes that "[m]ultipliers in the 3-4 range are
15  common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl.*
16  *Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. Aug. 15, 1995). The present case is a hybrid class
17  and collective action that also includes a representative PAGA claim, and there are multiple
18  subclasses in addition to the collective. While the subject matter is not so complex as to warrant a
19  multiplier at the higher range of 3 or 4, the Court is satisfied that a multiplier of 1.95 is entirely
20  appropriate.

21      Accordingly, Plaintiff's request for an award of attorneys' fees in the amount of $460,000
22  and costs in the amount of $15,000 is GRANTED.

23      **D.    Incentive Award**

24      Plaintiff requests an incentive award in the amount of $10,000. Incentive awards, "are
25  discretionary . . . and are intended to compensate class representatives for work done on behalf of
26  the class, to make up for financial or reputational risk undertaken in bringing the action, and,
27  sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W.*
28  *Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted). "Incentive awards

typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).

Plaintiff's participation was substantial and essential throughout the pendency of this case, up to and through settlement discussions. Plaintiff has submitted a declaration stating that he has spent approximately thirty hours in connection with this case, giving up family time and work. *See* Quiruz Decl. ¶ 7, ECF 98-1. Plaintiff describes his actions in pursuit of this litigation, including retaining class counsel, providing counsel with extensive information about his work history, gathering documents, being deposed, and attending a full-day mediation. *See id.*

Based on Plaintiff's efforts on behalf of the class, the request for a $10,000 incentive award is GRANTED.

### III.  ORDER

(1) Plaintiff's motion for final approval of the class and collective action settlement is GRANTED;

(2) Plaintiff's requests for attorneys' fees, costs, and an incentive award are GRANTED. Plaintiff is awarded attorneys' fees in the amount of $460,000, costs in the amount of $15,000, and an incentive award in the amount of $10,000;

(3) The Settlement Administrator's costs are APPROVED in an amount not to exceed $65,000;

(4) The Clerk shall close the file pursuant to this order and the Order and Final Judgment issued simultaneously; and

(5) Within 21 days after the distribution of the settlement funds and payment of attorneys' fees, or within 6 months after entry of the Order and Final Judgment, whichever is earlier, the parties shall file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements.

Dated:  November 9, 2020

_____
BETH LABSON FREEMAN
United States District Judge

19